RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206
File Name: 10a0167p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

AMERICAN CIVIL LIBERTIES UNION OF
KENTUCKY; LOUANNE WALKER; DAVID
HOWE; SARAH DOE and THOMAS DOE, on
behalf of themselves and their minor child,
JANE DOE; LAWRENCE DURHAM; PAUL LEE,
                    *Plaintiffs-Appellees,*

          *v.*

MCCREARY COUNTY, KENTUCKY; PULASKI
COUNTY, KENTUCKY,
                    *Defendants-Appellants.*

No. 08-6069

———————————

Appeal from the United States District Court
for the Eastern District of Kentucky at London.
No. 99-00507—Jennifer B. Coffman, Chief District Judge.

Argued: October 20, 2009

Decided and Filed: June 9, 2010

Before: RYAN, CLAY, and GIBBONS, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Mathew D. Staver, LIBERTY COUNSEL, Orlando, Florida, for Appellants.
David A. Friedman, AMERICAN CIVIL LIBERTIES UNION OF KENTUCKY, Louisville,
Kentucky, for Appellees. **ON BRIEF:** Mathew D. Staver, LIBERTY COUNSEL, Orlando,
Florida, Stephen M. Crampton, Mary E. McAlister, LIBERTY COUNSEL, Lynchburg,
Virginia, for Appellants. David A. Friedman, William E. Sharp, AMERICAN CIVIL
LIBERTIES UNION OF KENTUCKY, Louisville, Kentucky, for Appellees. John A.
Eidsmoe, FOUNDATION FOR MORAL LAW, Montgomery, Alabama, for Amicus Curiae.

        CLAY, J., delivered the opinion of the court. GIBBONS, J. (p. 18), delivered a
separate concurring opinion. RYAN, J. (pp. 19-20), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

**CLAY, Circuit Judge.** Defendants, McCreary County, Kentucky, Pulaski County, Kentucky, and officials from these counties, appeal from the district court order granting Plaintiffs' motion to alter or amend judgment, granting a permanent injunction prohibiting Defendants from displaying the three contested Ten Commandments displays, and construing Defendants' renewed motion for summary judgment as one for relief from final judgment. For the reasons set forth below, we **AFFIRM** the district court's order.

## BACKGROUND

In 1999, McCreary County and Pulaski County, Kentucky erected displays consisting of framed copies of the Ten Commandments in their county courthouses.[1] In response, Plaintiffs filed lawsuits, seeking preliminary injunctions that would require the removal of the displays based on violations of the Establishment Clause of the First Amendment.[2]

Shortly after the complaint was filed and prior to a ruling in the district court on Plaintiffs' request for a preliminary injunction, Defendants altered their displays "in an attempt to bring the display[s] within the parameters of the First Amendment and to insulate themselves from suit." *ACLU of Ky. v. McCreary County, Ky.*, 96 F. Supp. 2d 679, 684 (E.D. Ky. 2000) ("*McCreary I*"). The second set of displays posted in the courthouses included large copies of the Ten Commandments along with smaller copies of eight other documents, which were religious in nature.

---

[1] In addition, Harlan County, Kentucky erected displays of the Ten Commandments in the classrooms of its schools. However, the classroom displays are no longer at issue in this case. For a full recitation of the facts and history of this litigation, *see ACLU of Ky. v. McCreary County, Ky.*, 145 F. Supp. 2d 845 (E.D. Ky. 2001) ("*McCreary II*"), *aff'd*, 354 F.3d 438 (6th Cir. 2003) ("*McCreary III*"), *aff'd*, 545 U.S. 844 (2005) ("*McCreary IV*").

[2] Plaintiffs initially filed three lawsuits, but they were consolidated and treated as one by the district court and this Court on the initial appeal. We continue to treat them as one lawsuit for purposes of this appeal.

> Specifically, the Courthouse displays were modified to consist of: (1) an excerpt from the Declaration of Independence; (2) the Preamble to the Constitution of Kentucky; (3) the national motto of "In God We Trust"; (4) a page from the Congressional Record of Wednesday, February 2, 1983, Vol. 129, No. 8, declaring it the Year of the Bible and including a copy of the Ten Commandments; (5) a proclamation by President Abraham Lincoln designating April 30, 1863 a National Day of Prayer and Humiliation; (6) an excerpt from President Lincoln's "Reply to Loyal Colored People of Baltimore upon Presentation of a Bible" reading, "The Bible is the best gift God has ever given to man."; (7) a proclamation by President Ronald Reagan marking 1983 the Year of the Bible; and (8) the Mayflower Compact.

*McCreary III,* 354 F.3d at 442.   Defendants also passed new resolutions authorizing the second set of displays ("the 1999 resolutions"), which emphasized the importance of religion in historical documents of the United States and encouraged the County-Judge Executive to "post the Ten Commandments as the precedent legal code upon which the civil and criminal codes of the Commonwealth of Kentucky are founded."  (Dist. Ct. R.E. 119 Ex. B).  On May 5, 2000, the district court granted Plaintiffs' motion for a preliminary injunction, ordering that Defendants remove the second displays "immediately" and not erect "similar displays" in the future.  *McCreary I*, 96 F. Supp. 2d at 691.

In response to the district court's ruling, the counties removed the second set of displays, voluntarily dismissed an appeal from the initial preliminary injunction, and posted a third set of displays entitled the Foundations of Law and Government Displays ("Foundations Displays").  The third displays contained nine documents of equal size, including the Ten Commandments, along with one page of explanatory phrases to accompany each of the nine other documents.  Specifically,

> [t]he new courthouse displays consisted of the entire Star Spangled Banner, the Declaration of Independence, the Mayflower Compact, the Bill of Rights, the Magna Carta, the National Motto, the Preamble to the Kentucky Constitution, the Ten Commandments, Lady Justice and a one-page prefatory document entitled "The Foundations of American Law and Government Display." . . . The prefatory description states that the "display contains documents that played a significant role in the

foundation of our system of law and government." . . . With regard to the Ten Commandments, the prefatory description states:

> The Ten Commandments have profoundly influenced the formation of Western legal thought and the formation of our country. That influence is clearly seen in the Declaration of Independence, which declared that, "We hold these truths to be self-evident, that all men are created equal, that they are endowed by their Creator with certain unalienable Rights, that among these are Life, Liberty, and the pursuit of Happiness." The Ten Commandments provide the moral background of the Declaration of Independence and the foundation of our legal tradition.

There is no other discussion of the Ten Commandments and how it purportedly relates to any of the other documents in the display.

*McCreary III*, 354 F.3d at 443. At the time the Foundations Displays were erected, the counties did not repeal the 1999 resolutions, which were passed just months earlier, or pass new resolutions authorizing the third displays. On June 22, 2001, the district court granted Plaintiffs' motion for a supplemental preliminary injunction to include the third displays. On December 18, 2003, this Court affirmed.

On October 12, 2004, the Supreme Court granted Defendants' petition for certiorari.[3] On March 8 and March 10, 2005, after oral argument but before the Supreme

---

[3]Defendants sought certiorari on the following issues:

> 1. Whether the Establishment Clause is violated by a privately donated display on government property that includes eleven equal size frames containing an explanation of the display along with nine historical documents and symbols that played a role in the development of American law and government where only one of the framed documents is the Ten Commandments and the remaining documents and symbols are secular.

> 2. Whether a prior display by the government in a courthouse containing the Ten Commandments that was enjoined by a court permanently taints and thereby precludes any future display by the same government when the subsequent display articulates a secular purpose and where the Ten Commandments is a minority among numerous other secular historical documents and symbols.

> 3. Whether the Lemon test should be overruled since the test is unworkable and has fostered excessive confusion in Establishment Clause jurisprudence.

> 4. Whether a new test for Establishment Clause purposes should be

Court issued a decision, the counties passed new resolutions ("the 2005 resolutions"), which repealed and repudiated the 1999 resolutions authorizing the second displays. On June 27, 2005, the Supreme Court upheld the preliminary injunction on the basis that Defendants exhibited an unconstitutional religious purpose in posting the Foundations Displays. The Supreme Court viewed the repeal of the 1999 resolutions as "acts of obviously minimal significance in the evolution of the evidence." *McCreary IV*, 545 U.S. at 872 n.19.

After the Supreme Court issued its opinion, the case returned to the district court for further proceedings. The district court entered a scheduling order containing, among other things, discovery and dispositive motion deadlines. After discovery closed, both sides submitted motions for summary judgment. Between the Supreme Court decision in June of 2005 and the filing of the motions for summary judgment in January and February of 2007, the parties merely conducted discovery as to the factual details and motivation for the sequence of the displays. Defendants made no changes to the Foundation Displays, nor did they pass any new resolutions concerning the purpose of the displays.

On September 28, 2007, the district court denied both Plaintiffs' and Defendants' motions for summary judgment. In denying Plaintiffs' motion for a permanent injunction against the Foundation Displays, the district court held that the constitutional violation is not "continuing" as required by the standard for a permanent injunction because "it is possible to purge the taint of the impermissible religious purpose." (Dist. Ct. R.E. 153 at 10). However, the district court also denied Defendants' motion for summary judgment, holding that the counties had not taken any actions since the Supreme Court decision that showed a change in their predominantly religious purpose; thus, Defendants' actions in posting the Foundations Displays continued to violate the Establishment Clause. Despite the district court's holding that neither Plaintiffs nor

set forth by this Court when the government displays or recognizes historical expressions of religion.

Petition for Writ of Certiorari, *McCreary IV*, 2004 WL 1427470, at *i (June 21, 2004).

Defendants were entitled to judgment as a matter of law, the court also found that no triable issues of fact remained and referred the case to the magistrate judge for a settlement conference.

On October 9, 2007, in response to the district court's finding that Defendants continued to violate the Establishment Clause, Defendants enacted new resolutions regarding the Foundations Displays ("the 2007 resolutions"). The 2007 resolutions stated the educational and historical purpose of the Foundations Displays and expressly disclaimed any attempt to endorse religion. On October 15, 2007, Plaintiffs filed a timely motion under Federal Rules of Civil Procedure 59 and 60 to alter or amend the court's September 28, 2007 judgment denying Plaintiffs' motion for summary judgment. On October 30, 2007, Defendants filed a renewed motion for summary judgment in light of the 2007 resolutions. Plaintiffs moved to strike Defendants' renewed motion on November 19, 2007, because Defendants had filed the motion more than one year after the dispositive motion deadline and had attempted to admit new evidence more than one year after the close of discovery.

On August 4, 2008, the district court: (1) granted Plaintiffs' motion to alter or amend judgment, (2) denied Plaintiffs' motion to strike Defendants' motion for summary judgment and directed Plaintiffs to file a response, and (3) construed Defendants' motion for summary judgment as one of relief from final judgment. In altering its judgment under Rule 59(e), the district court declared the Foundation Displays unconstitutional and permanently enjoined Defendants from displaying all three displays in the county courthouses based on the court's finding that the Foundations Displays continued to violate the Establishment Clause as of its September 28, 2007 order. The district court also ruled that its order was final and appealable. On September 2, 2008, Defendants filed their timely notice of appeal from the district court's final judgment. On September 30, 2008, the district court dismissed without prejudice what it deemed to be Defendants' motion for relief from judgment on the ground that the court had lost jurisdiction over the motion when Defendants filed their appeal. Defendants filed no notice of appeal from the district court's denial of their relief from judgment.

## DISCUSSION

### I.  Permanent Injunction Standard

This appeal differs from the last time we heard this case in that we are reviewing the district court's grant of a permanent injunction rather than a preliminary injunction.

In evaluating a district court's grant of a permanent injunction, we review its factual findings under a clearly erroneous standard, its legal conclusions *de novo*, and the scope of injunctive relief under an abuse of discretion standard.  *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 602 (6th Cir. 2006).

In general, "[t]he standard for a preliminary injunction is essentially the same as for a permanent injunction with the exception that [for a preliminary injunction] the plaintiff must show a likelihood of success on the merits rather than actual success." *Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 546 n.12 (1987) (internal citations omitted).  In the context of this case, "a party is entitled to a permanent injunction if it can establish that it suffered a constitutional violation and will suffer 'continuing irreparable injury' for which there is no adequate remedy at law." *Baird*, 438 F.3d at 602 (citing *Kallstrom v. City of Columbus*, 136 F.3d 1055, 1067 (6th Cir. 1998)).

### II.  Disposition of Permanent Injunction

As was true the last time we heard this matter, the governing standard for determining whether a particular government action violates the Establishment Clause remains *Lemon v. Kurtzman*, 403 U.S. 602 (1971).  Despite Defendants' attempts to persuade the Supreme Court to abandon the inquiry into legislative purpose, the Supreme Court confirmed that the *Lemon* test remains the appropriate inquiry.  *See McCreary IV*, 545 U.S. at 861-64.  Under the *Lemon* test, as originally formulated, reviewing courts must consider whether (1) the government activity in question has a secular purpose, (2) the activity's primary effect advances or inhibits religion, and (3) the governmental activity fosters an excessive entanglement with religion.  *Lemon*, 403 U.S. at 612-13.

The touchstone of a reviewing court's analysis under the Establishment Clause requires "government neutrality between religion and religion, and between religion and nonreligion." *McCreary IV*, 545 U.S. at 860 (quoting *Epperson v. Arkansas*, 393 U.S. 97, 104 (1968)).

In analyzing purpose under the first prong of the *Lemon* test, "[t]he eyes that look to purpose belong to an '"objective observer,"' one who takes account of the traditional external signs that show up in the '"text, legislative history, and implementation of the statute,"' or comparable official act." *Id.* at 862 (quoting *Sante Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 308 (2000) (quoting *Wallace v. Jaffree*, 472 U.S. 38, 76 (1985))). *See also Edwards v. Aguillard*, 482 U.S. 578, 594-95 (1987). "[A]lthough a legislature's stated reasons will generally get deference, the secular purpose required has to be genuine, not a sham, and not merely secondary to a religious objective." *McCreary IV*, 545 U.S. at 864. Thus, the government violates the Establishment Clause when it acts with the "predominant purpose of advancing religion." *Id.* at 860.

Furthermore, the objective observer is considered to have "reasonable memories," and Supreme Court precedents "sensibly forbid an observer 'to turn a blind eye to the context in which [the] policy arose.'" *Id.* at 866 (quoting *Santa Fe*, 530 U.S. at 315). Thus, reviewing courts must look with the eye of an observer "familiar with the history of the government's actions and competent to learn was history has to show." *Id.* (citing *Santa Fe*, 530 U.S. at 308). As a consequence, "the same governmental action may be constitutional if taken in the first instance and unconstitutional if it has a sectarian heritage." *Id.* at 866 n.14 ("where one display has a history manifesting sectarian purpose that the other lacks, it is appropriate that they be treated differently, for the one display will be properly understood as demonstrating a preference for one group of religious believers as against another").

As an initial matter, given that Defendants' brief challenges only the permanent injunction against the Foundations Display, we affirm the permanent injunction as to the first and second displays. We further find that the district court did not err in permanently enjoining the Foundations Displays based on its finding that Defendants'

actions in posting these displays continued to violate the Establishment Clause as of its September 28, 2007 order.

The district court properly found that no facts affecting the purpose analysis had changed between the Supreme Court decision finding an improper religious purpose in June of 2005 and the filing of the motions for summary judgment on remand in January and February of 2007. In that time, Defendants made no changes to the content or context of the Foundation Displays, nor did they pass any new resolutions concerning the purpose of the displays. The Supreme Court found the content of the Foundation Displays, in conjunction the evolution of evidence, to reveal Defendants' religious purpose in posting the displays. According to the Court, the puzzling choices that the counties made concerning which documents to include in the displays and which documents to omit would probably lead an objective observer to "suspect that the Counties were simply reaching for any way to keep a religious document on the walls of courthouses constitutionally required to embody religious neutrality." *McCreary IV*, 545 U.S. at 873.[4] Likewise, on remand, the "objective observer" who has reasonable memories would have seen the same Foundations Displays posted in the courthouses with the same set of resolutions authorizing the displays, and would have instantly recognized the same religious purpose that Defendants articulated during the previous round of litigation. *See also Santa Fe*, 530 U.S. at 315 (holding that a school district's

---

[4]According to the Supreme Court:

the selection of posted material [does not] suggest a clear theme that might prevail over evidence of the continuing religious object. In a collection of documents said to be "foundational" to American government, it is at least odd to include a patriotic anthem, but to omit the Fourteenth Amendment, the most significant structural provision adopted since the original Framing. And it is no less baffling to leave out the original Constitution of 1787 while quoting the 1215 Magna Carta even to the point of its declaration that "fish-weirs shall be removed from the Thames." *Id.*, at 205a, ¶ 33. If an observer found these choices and omissions perplexing in isolation, he would be puzzled for a different reason when he read the Declaration of Independence seeking confirmation for the Counties' posted explanation that the Ten Commandments' "influence is clearly seen in the Declaration," *id.*, at 180a; in fact the observer would find that the Commandments are sanctioned as divine imperatives, while the Declaration of Independence holds that the authority of government to enforce the law derives "from the consent of the governed," *id.*, at 190a.

*McCreary IV*, 545 U.S. at 872-73.

history of non-compliance with the Establishment Clause must be considered in determining whether the school district's latest iteration of the challenged policy was constitutional).

Defendants attempt to argue that because the 2005 resolutions, which adopted educational purposes for the Foundations Displays and repealed the 1999 resolutions containing explicit religious purpose statements, were passed after the Supreme Court heard oral arguments, the Supreme Court did not have a chance to adequately consider the context of the 2005 resolutions or their effect in eradicating the improper religious purpose.  However, despite the fact that the counties passed these resolutions after briefing and oral argument, the Supreme Court still considered them in deciding that the counties had not eliminated the improper religious purpose.  In the context of the overall evolution of the displays, the Supreme Court found that the counties' new unwritten statements of purpose "were presented only as a litigating position" and that the new 2005 written resolutions were "acts of obviously minimal significance in the evolution of the evidence." *McCreary IV*, 545 U.S. at 871, 872 n.19. *See also Adland v. Russ*, 307 F.3d 471, 481 (6th Cir. 2002) (finding that Kentucky's clarification of its Ten Commandments display only after it was in the midst of litigation was probative of the Commonwealth's religious purpose).

In support of their argument that the 2005 resolutions evince a secular purpose, Defendants argue that the Supreme Court merely mentioned the 2005 resolutions in a footnote and that a reviewing court should generally defer to a legislature's stated intent unless it is determined to be a "sham."  But Defendants have failed to show why the district court should have attributed more significance to the 2005 resolutions than did the Supreme Court in determining the purpose of the displays.  The Supreme Court considered the 2005 resolutions when the Court made its decision, and the Supreme Court's assessment of the 2005 resolutions became the law of the case, which we are obligated to follow.  *See Niemi v. NHK Spring Co., Ltd.*, 543 F.3d 294, 308 (6th Cir. 2008) (citing *Scott v. Churchill*, 377 F.3d 565, 569 (6th Cir. 2004); *Rouse v. DaimlerChrysler Corp. UAW*, 300 F.3d 711, 715 (6th Cir. 2002)) ("[u]nder the

law-of-the-case doctrine, rulings made at one point in the litigation should continue to govern in subsequent stages of that litigation").

The district court was in no position on remand to assume that the Supreme Court did not do its job and did not afford the resolutions the proper weight. The district court was correct to take its direction from the Supreme Court, not from Defendants' bare assertion that the 2005 resolutions eradicated the improper religious purpose. Lower courts are "obligated to follow Supreme Court dicta, particularly where there is not substantial reason for disregarding it, such as age or subsequent statements undermining its rationale." *United States v. Marlow*, 278 F.3d 581, 588 n.7 (6th Cir. 2002) (citing *Gaylor v. United States*, 74 F.3d 214, 217 (10th Cir. 1996) ("this court considers itself bound by Supreme Court dicta almost as firmly as by the Court's outright holdings, particularly when the dicta is recent and not enfeebled by later statements"); *McCoy v. Mass. Inst. of Tech.*, 950 F.2d 13, 19 (1st Cir. 1991) ("federal appellate courts are bound by the Supreme Court's considered dicta almost as firmly as by the Court's outright holdings . . .")).

Although the Supreme Court made clear that the counties' past actions do not "forever taint any effort on their part to deal with the subject matter," *McCreary IV* at 874, Defendants offered no new facts on remand that show that their purpose had changed from the one that the Supreme Court found to violate the Establishment Clause. The four changes cited by Defendants are not "genuine changes in constitutionally significant conditions." *Id.* First, Defendants' distinction between the *content* of the second and third displays does not govern whether the legislators had an improper *purpose* in hanging the displays and, in any event, those distinctions existed before the Supreme Court issued its decision. Second, the fact that more time has passed since the Supreme Court decision is meaningless in this case, because Defendants have spent the time since the Supreme Court decision continuously seeking to accomplish their initial purpose of posting the Ten Commandments as a religious document. Unlike a case in which the passage of time might have some significance, there has been no dormant period here; Defendants have continuously sought to defend their actions and accomplish

what they initially set out to do. Third, the change in government personnel is irrelevant, because the "objective observer" test does not encompass "judicial psychoanalysis of a drafter's heart of hearts." *Id.* at 862. Finally, the two sets of "new" government resolutions are not new: the 2005 resolutions were enacted before the Supreme Court's decision and deemed of minimal significance by the Court, and the 2007 resolutions were passed more than a year after the close of discovery in response to the district court's finding that the posting of the Foundations Displays continued to violate the Establishment Clause. Thus, the district court properly found that no facts changed on remand that would affect the Supreme Court's analysis.

Furthermore, even if this Court were to consider the 2007 resolutions, which were adopted after and in direct response to the district court's finding that Defendants continued to advance a religious purpose and more than a year after the close of discovery, it is clear that these resolutions, like the previous statements of purpose, were adopted only as a litigating position. These resolutions represent Defendants' latest effort in a long line of attempts to conform their conduct to the requirements of the Constitution after adverse court rulings. *See Santa Fe*, 530 U.S. at 315 (noting that the case at issue was "the latest step in developing litigation" and "refus[ing] to turn a blind eye to the context in which [the policy of prayer at football games] arose" in finding that "this policy was implemented with the purpose of endorsing [religion]"). Thus, like the 2005 resolutions, the 2007 resolutions provide little evidence that Defendant's actual purpose has changed and are of minimal significance in light of the evolution of the evidence. *See McCreary IV*, 545 U.S. at 872 n.19.

The fact that this Court has found–since the Supreme Court decided *McCreary*–that two counties did not have an impermissible religious purpose in posting displays identical to the Foundations Displays at issue does not affect our finding that the counties in this case have still not presented a valid secular purpose. *See ACLU of Ky. v. Grayson County, Ky.*, 591 F.3d 837 (6th Cir. 2010); *ACLU of Ky. v. Mercer County, Ky.*, 432 F.3d 624 (6th Cir. 2005). The Supreme Court in *McCreary* noted that "the same government action may be constitutional if taken in the first instance and

unconstitutional if it has a sectarian heritage." *McCreary IV*, 545 U.S. at 866 n.14. Unlike the extended history of sectarian purpose here, in *Mercer* "there was only one display, one authorizing measure, and one implementation, all of which demonstrate a secular purpose." 432 F.3d at 631. Likewise, the majority in *Grayson* characterized the history of the display as evidencing a predominantly secular purpose. *See Grayson*, 591 F.3d at 849 ("As in *Mercer County*, the approval of the display in Grayson County was not attended by a history evidencing a predominantly religious purpose. There were no earlier displays nor were there any earlier resolutions indicating an avowedly religious purpose."). While there is significant evidence in the *Grayson* record that Defendants' predominant purpose, as observed by an objective observer, was to post the Ten Commandments as a religious text, we are bound to interpret *Grayson* in a manner that does not conflict with the Supreme Court's decision in *McCreary*.[5] Thus, given the lack of the same type of extended sectarian history in *Mercer* and *Grayson*, these cases are distinguishable from the instant case. Further, unlike in *Grayson* and *Mercer*, the Supreme Court in *McCreary* has definitively found that the display at issue violates the Establishment Clause, and we are obligated to follow that precedent if no constitutionally significant facts have changed.

Because the Supreme Court found that Defendants acted with the predominant purpose of advancing religion in displaying each of their three Ten Commandment displays in the county courthouses and Defendants continued to exhibit the same purpose when the district court issued its September 28, 2007 order, Defendants' action in posting these displays violated the Establishment Clause. Thus, Plaintiffs have established that they suffered a constitutional violation and will suffer continuing irreparable injury if the violation continues. The fact that Defendants seek to minimize

---

[5]However, we also note that the *Mercer* and *Grayson* opinions essentially ignore the Supreme Court's reliance in *McCreary* on *both* the content of the display and the evolution of the evidence in determining that Defendants had a religious purpose in posting the Foundations Display. The *Mercer* and *Grayson* panels would have us believe that the Supreme Court approved of the content of the Foundations Displays and relied exclusively on the existence of prior displays and past conduct of McCreary County officials in rejecting Defendants' stated purpose as a sham. In fact, the Supreme Court in *McCreary* noted that the puzzling choices that the counties made concerning the content of the Foundations Displays would probably lead an objective observer to "suspect that the Counties were simply reaching for any way to keep a religious document on the walls of courthouses constitutionally required to embody religious neutrality." *McCreary IV*, 545 U.S. at 873.

the residue of religious purpose does not mean that Plaintiffs do not suffer continuing irreparable injury so long as the display remains on the walls of the county courthouses. Thus, there is no adequate remedy at law, and Plaintiffs have demonstrated that they are entitled to a permanent injunction.

Accordingly, the district court erred in declining to enter a permanent injunction against Defendants in its September 28, 2007 order after finding that Defendants had violated the Establishment Clause.  However, the district court rectified that error by properly enjoining Defendants from posting the displays in its August 4, 2008 order.

## III.  Disposition of Procedural Claims

### A.  Plaintiffs' Motion to Amend or Alter Judgment

#### 1.  Standard of Review

Although we generally review a grant or denial of a motion to alter or amend a judgment under Rule 59(e) for abuse of discretion, when the Rule 59(e) motion seeks review of a grant of summary judgment, we apply a *de novo* standard of review.  *Cockrel v. Shelby County Sch. Dist.*, 270 F.3d 1036, 1047 (6th Cir. 2001).  In granting Plaintiffs' Rule 59(e) motion, the district court essentially reconsidered and granted summary judgment in favor of Plaintiffs.  Accordingly, we apply a *de novo* standard of review.

"A motion to alter or amend a judgment must be filed no later than 10 days *after* the entry of the judgment."  Fed. R. Civ. P. Rule 59(e) (emphasis added).  A court may grant a motion to alter or amend judgment only if there was "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice."  *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (citing *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)).

### 2. Analysis

Because the district court erroneously denied Plaintiffs' summary judgment motions after finding that Defendants continued to violate the Establishment Clause and that no triable issues of fact remained, the district court had not yet entered judgment when it granted Plaintiffs' motion to alter or amend judgment. Thus, Plaintiffs' motion was effectively a motion for reconsideration of summary judgment and "[t]he district court was therefore free to reconsider or reverse its decision for any reason." *Cameron v. Ohio*, 344 F. App'x 115, 118 (6th Cir. 2009) (citing *Russell v. GTE Gov't Sys. Corp.*, 141 F. App'x 429, 436 (6th Cir. 2005)). However, this Court has also found that it may be "proper for the [d]istrict [c]ourt to entertain a motion to alter or amend a judgment under Rule 59(e) even though it was filed prior to the actual entry of judgment." *Smith v. Hudson*, 600 F.2d 60, 62 (6th Cir. 1979). Under the stricter Rule 59(e) standard, Plaintiffs were entitled to have the judgment altered in view of the district court's clear error of law in declining to enter a permanent injunction in its September 28, 2007 order.

Thus, regardless of whether Plantiffs' motion should have been classified under Rule 59(e) or Rule 54(b), the district court did not err in reconsidering its earlier decision and determining that Plaintiffs were entitled to a permanent injunction.

### B. Defendant's Renewed Motion for Summary Judgment

### 1. Standard of Review

We generally review a district court's denial of a motion for relief from judgment pursuant to Rule 60(b) only for an abuse of discretion. *Massi v. Walgreen Co.*, 337 F. App'x 542, 545 (6th Cir. 2009) (citing *Davis v. Jellico Cmty. Hosp., Inc.*, 912 F.2d 129, 133 (6th Cir. 1990)). When this Court reviews for abuse of discretion, it will reverse only when it "is firmly convinced that a mistake has been made." *Bush v. Rauch*, 38 F.3d 842, 848 (6th Cir. 1994) (internal citations omitted).

To overcome this deferential standard of review over a motion for relief from judgment, a party must demonstrate that the district court committed "a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal

standard, or relying upon clearly erroneous findings of fact." *In re Ferro Corp. Derivative Litig.*, 511 F.3d 611, 623 (6th Cir. 2008).

### 2. Analysis

Because the district court entered judgment in the same decision that it construed Defendants' renewed motion for summary judgment as one for relief from judgment under Rule 60(b), it was reasonable for the district court to construe the entry of judgment as coming before the conversion of Defendants' motion.

Furthermore, a district court has broad discretion to manage its docket. *Reed v. Rhodes*, 179 F.3d 453, 471 (6th Cir. 1999). A district court's decision whether a late filing results from "excusable neglect" is subject to review for abuse of discretion. *Allen v. Murph*, 194 F.3d 722, 723-24 (6th Cir. 1999). Defendants filed their renewed motion for summary judgment more than one year after the deadline for dispositive motions had passed without seeking leave to file. Defendants sought to introduce new facts–the 2007 resolutions that were passed after and in response to the district court's summary judgment decision–more than one year after the close of discovery. Accordingly, based on the district court's power to manage its own docket, the court had ample discretion to strike Defendants' late renewed motion for summary judgment. By converting Defendants' renewed summary judgment motion to a Rule 60(b) motion for relief from judgment and considering Defendants' new facts and arguments, the district court was giving Defendants the benefit of the doubt.

Finally, we decline to review the district court's subsequent denial of Defendants' motion for relief from final judgment because we lack jurisdiction. Defendants filed their notice of appeal on September 2, 2008 from the district court's order of August 4, 2008, in which it converted Defendants' motion. The district court did not deny Defendants' Rule 60(b) motion until September 30, 2008. Thus, this order denying relief from judgment was not and could not have been appealed pursuant to Defendants' September 2, 2008 notice of appeal. After the district court's September 30, 2008 denial of relief from judgment, Defendants had 30 days under Fed. R. App. P.

4(a)(1)(A) to file a notice of appeal of that order.  However, Defendants failed to do so. This failure deprives this Court of jurisdiction over Defendants' attempt to appeal from the September 30, 2008 order.

## CONCLUSION

For the reasons set forth above, we **AFFIRM** the district court's order permanently enjoining Defendants from erecting each of their three Ten Commandment displays in the McCreary County and Pulaski County courthouses.

––––––––––––––––––––––

**CONCURRENCE**

––––––––––––––––––––––

JULIA SMITH GIBBONS, Circuit Judge, concurring. I concur with the majority opinion's thoughtful resolution of the constitutional issues surrounding the 2005 Resolutions and its conclusions on the procedural issues in this case but write to emphasize one point. Given that we lack jurisdiction to consider the counties' appeal from the district court's denial of their motion for relief from judgment under Federal Rule of Civil Procedure 60(b), in which they first brought the 2007 Resolutions to the court's attention, I would not reach the issue of whether the 2007 Resolutions evince a religious or secular purpose for the Foundations Displays. In light of the Supreme Court's cautioning that the counties' past actions need not "forever taint any effort on their part to deal with the subject matter," *McCreary County v. ACLU*, 545 U.S. 844, 873–74 (2005), I would leave this issue to the district court in the first instance. *See Jordon v. Gilligan*, 500 F.2d 701, 707 (6th Cir. 1974) (noting that appellate court *dicta* has persuasive precedential effect only).

—————————

**DISSENT**

—————————

RYAN, Circuit Judge, dissenting.  This appeal is essentially a rerun of what the parties argued and our panel majority decided in *ACLU v. McCreary County*, 354 F.3d 438 (6th Cir. 2003) (*McCreary III*), and the Supreme Court affirmed in *McCreary County v. ACLU*, 545 U.S. 844 (2005) (*McCreary IV*).  The only real difference is that this appeal presents the question whether the defendants have "purged" the "Foundations of Law and Government Displays" of the religious "taint" of the Ten Commandments. My colleagues think they have not.  I think they could not because there was no "taint" to be "purged," and even if there were, the defendants' effort to do so has been disqualified as a mere "litigating position."

The merits and demerits of the vitally important First Amendment Establishment Clause issues that are at the heart of this case were thoroughly discussed in Judge Clay's opinion for the panel and my dissenting opinion in *McCreary III*, and in Justice Souter's opinion for the Supreme Court and Justice Scalia's dissent in *McCreary IV*.

My colleagues have deftly foreclosed consideration of the issue whether the counties' 2007 resolutions expressly disclaiming any intention to endorse religion may have "purged the taint" of religion from the third set of displays with the dismissive observation that the 2007 resolutions were "adopted only as a litigating position."  With that nearly Clausewitz-perfect blocking action, I am left with nothing to add to what I wrote in *McCreary III*, except the following:

1.        I humbly associate myself with Justice Scalia's powerful and logically compelling explanation in *McCreary IV* that the displays in question do not violate the First Amendment and never did.

2.        I cannot be too critical of my panel colleagues who feel *stare decisis*-bound by the Supreme Court majority's persistent hostility to religion and its refusal to acknowledge the historical evidence that religion, religious symbols, and the support of

religious devotion were of the very essence of the values the Constitution's authors and the ratifying legislators thought they were preserving in the language of the First Amendment.

The result, I fear, is that federal courts will continue to close the Public Square to the display of religious symbols as fundamental as the Ten Commandments, at least until the Supreme Court rediscovers the history and meaning of the words of the religion clauses of the First Amendment and jettisons the flawed reasoning of *Lemon v. Kurtzman*, 403 U.S. 602 (1971).

3.          Perhaps the panel's decision in this case, taken together with this court's decisions in *ACLU v. Mercer County*, 432 F.3d 624 (6th Cir. 2005), and *ACLU v. Grayson County*, 591 F.3d 837 (6th Cir. 2010), will move our court to reconsider *en banc* what my colleagues have held today, from which I strongly dissent. *See McCreary III* and *McCreary IV*.