NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 19a0258n.06
No. 18-1566

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| SINGH MANAGEMENT COMPANY, LLC, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | **FILED** |
| | ) | May 20, 2019 |
| v. | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| SINGH DEVELOPMENT COMPANY, INC.; | ) | |
| SINGH GROUP, LLC; SINGH GROUP II, LLC; | ) | ON APPEAL FROM THE |
| SINGH LENDING, LLC, dba Team Singh; SINGH | ) | UNITED STATES DISTRICT |
| PROPERTY MANAGEMENT, LLC; DARSHAN | ) | COURT FOR THE EASTERN |
| SINGH GREWAL; PARGAT SINGH GREWAL; | ) | DISTRICT OF MICHIGAN |
| SINGH BUILDING COMPANY, INC.; SINGH | ) | |
| MORTGAGE GROUP, LLC; SINGH REAL | ) | |
| ESTATE, LLC; and JASJIT TAKHAR, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |

Before: DONALD, LARSEN, and NALBANDIAN, Circuit Judges.

LARSEN, Circuit Judge. Singh Management Company, LLC filed trademark infringement claims against Darshan Singh Grewal and Pargat Singh Grewal, as well as against various entities they control. The district court ordered the claims to arbitration, and the arbitrator issued an award. After ostensibly confirming the arbitration award, the district court then entered injunctive relief which, Dashan and Pargat claim, was inconsistent with the confirmation order. Darshan and Pargat filed a post-judgment motion to clarify or amend the judgment, but the district court summarily denied their motion. Due to the apparent inconsistencies in the district court's orders, and our inability to discern an explanation for them, we cannot rule out the possibility that

the district court abused its discretion. We therefore VACATE the denial of the motion and REMAND for further proceedings.

I.

The extended Singh Grewal family operates "a vast network of real estate development and management companies" which use the 'Singh' trade name, including the appellee entity Singh Management LLC (collectively, Singh Management). The family patriarch, Gurmale Singh Grewal, has been chief executive of Singh Management since 1973. Two of his nephews, Darshan Singh Grewal and Pargat Singh Grewal, began working for Singh Management in the mid-1990s. In 2010 and 2011 respectively, Darshan and Pargat were ousted from Singh Management over allegations of financial misconduct.[1] They subsequently formed their own real estate businesses using the 'Singh' name.

Darshan and Pargat initiated a shareholder lawsuit in Michigan state court against Singh Management; the state court referred the case (including Singh Management's counterclaims) to arbitration. Before the arbitration began, Singh Management filed a complaint in federal court alleging that Darshan, Pargat, and entities controlled by the two (collectively, Darshan and Pargat), as well as a business associate named Jasjit Takhar, had infringed Singh Management's trademark rights in the 'Singh' name. The district court determined that the trademark claims were subject to the parties' arbitration agreements and compelled arbitration. The order noted, however, that the arbitration agreements did not grant the arbitrator authority to issue injunctive relief. Thus, the district court "retain[ed] jurisdiction to entertain post-arbitration motions to enter judgment on the arbitration award and for injunctive relief."

---

[1] The arbitrator ultimately found these allegations baseless.

One arbitrator heard all the state and federal claims in a consolidated proceeding governed by the Michigan Uniform Arbitration Act (MUAA), Mich. Comp. Laws § 691.1681 *et seq.* The arbitrator issued a comprehensive Arbitration Opinion and Award in January 2017 ("January Award") in which, among other things, he found that Darshan and Pargat's use of the 'Singh' name had infringed on Singh Management's rights. The January Award stated that "consumers would likely be confused if [Darshan and Pargat] continued to use the name 'Singh' alone in the names of their business entities which are unrelated to those of [Singh Management]." But the arbitrator also found that because Singh was Darshan and Pargat's last name, they "may use the name 'Singh' in the name of a business entity provided that the name is used as the surname given to Plaintiffs in conjunction with their full names." The arbitrator declined to award Singh Management any money damages for the infringement.

After receiving the January Award, both sides asked the arbitrator to clarify various aspects of the hundred-page decision—a procedure authorized by the MUAA. *See* Mich. Comp. Laws § 691.1700(1)(c). Specifically, Darshan and Pargat asked the arbitrator to clarify "[t]he scope of injunctive relief regarding trademark claims," saying that the January Award "discusses certain hypothetical instances of the use of the name [i.e., the full name example] which may or may not be permitted. We seek to confirm our understanding of your ruling." Determining the scope of injunctive relief was arguably beyond the arbitrator's jurisdiction because the district court had reserved jurisdiction to entertain motions for injunctive relief; nevertheless, Singh Management did not object to the motion. The arbitrator responded to the motion by ordering both sides to "prepare a proposed order, for review by the Arbitrator, consistent with the Arbitrator's rulings on the trademark issues in the [January] Award." After receiving the proposed orders, the arbitrator would "review each order and render a decision as to which Order [was] appropriate based on the"

January Award. Once again, Singh Management failed to object to the arbitrator's jurisdiction to "render a decision" about the "appropriate" injunctive relief.

Instead, both sides submitted proposed orders. Singh Management submitted one that would enjoin Darshan and Pargat and their affiliates from using the 'Singh' name in any business unless they used it as part of a full name—e.g., 'Darshan Singh Grewal Building Company.' Darshan and Pargat, on the other hand, submitted a less restrictive proposal that would have allowed Darshan and Pargat to use the name in any way except "alone as the only identifying name to describe its business in a manner that is likely to cause confusion with any common law rights Singh LLC has in the word Singh." In a letter accompanying their proposed order, Darshan and Pargat explained that they viewed the January Award's reference to using their full names as illustrative, not exclusive. In other words, they believed the January Award indicated that using Darshan's or Pargat's full name as part of a business name was *one* example of a permissible use of the 'Singh' name but was not the *only* example. Darshan and Pargat's proposed order also specified that "[a]ll claims against [Takhar] are hereby dismissed, with prejudice." They explained that explicitly dismissing Takhar would tie up a "loose end" in the January Award, which "made no finding against . . . Takhar," and was "clear that 'any other relief not expressly granted herein is denied.'"

Unsatisfied with the parties' proposed orders, the arbitrator instructed Singh Management "to submit a new order to him for consideration that addresses only the rulings made in the [January] Award." He explained that "the Order should not include any relief that was not specifically ordered in the [January] Award." Once Singh Management had submitted this new draft order, Darshan and Pargat would have an opportunity to "provide their comments" on it.

The second round of proposed orders played out much like the first. Singh Management again submitted a proposed order that would have prohibited Darshan and Pargat "from using the . . . Singh name" unless "used in conjunction with their first and last names." Darshan and Pargat submitted edits that would prohibit them only from using the 'Singh' name "alone without more to distinguish its business(es) from" Singh Management. And they again proposed language dismissing all claims against Takhar with prejudice. As before, Singh Management did not object to the exercise.

The arbitrator issued an Order Regarding Trademark Rulings in July 2017 (July Order), "to permit the Parties to present the rulings of the Arbitrator on the Trademark Issues for use by the Federal Court in entry of a judgment in the trademark proceeding." The July Order appeared to adopt Darshan and Pargat's less-restrictive formulation, directing that Darshan and Pargat be "permanently enjoined and restrained from using the name 'Singh' alone *as the only identifying proper noun* used to describe their business." Furthermore, "[a]ll claims against . . . Takhar [we]re dismissed with prejudice." Singh Management made no objection to the arbitrator regarding his authority to issue the July Order, and so seven months of dispute over the proposed injunction's scope ended—temporarily, it turned out.

The parties returned to federal district court, and both sides filed motions to confirm the arbitration award.[2] But in reality, they asked for confirmation of different awards. Darshan and Pargat requested confirmation of the January Award "as clarified by" the July Order. Singh Management, on the other hand, asked that the district court confirm only the January Award. Singh Management took the position that "[a]lthough styled as an 'Order,'" the July Order "is

---

[2] All parties relied on both the MUAA and the Federal Arbitration Act (FAA), 9 U.S.C. § 1 *et seq.*, in their confirmation motions, and agree that the choice of law does not affect the outcome here. For convenience, we will principally rely on the FAA.

advisory in nature and leaves to the Parties and this Court what relief should be awarded in light of the [January] Award." Singh Management argued that "the injunctive relief described in the [July Order] is incompatible with the [January] Award and insufficient" to protect Singh Management's trademark rights. Singh Management simultaneously filed a Motion for Permanent Injunctive Relief requesting that Darshan and Pargat (and Takhar, despite the arbitrator's dismissal) be permanently enjoined from using the 'Singh' name except as part of Darshan's or Pargat's full names.

The district court's brief Confirmation Order did not grapple with the parties' dispute over what constituted the binding "award." *See* 9 U.S.C. § 9. The parties' briefing evinced clear differences of opinion over the appropriate scope of injunctive relief and whether the arbitrator had already ruled on that issue. Yet while acknowledging the dispute, the Confirmation Order did not clearly resolve it—observing only (correctly, as a technical matter) that both parties "seek confirmation of the arbitrator's award, not that the award be vacated or modified." "[I]n accordance with all parties' request for confirmation," the district court "confirm[ed] the arbitrator's [January Award], precisely as written, including as clarified by the arbitrator's [July Order], as reflected in the judgment entered simultaneously with this order." The accompanying Judgment, however, departed from the language in the July Order and awarded more restrictive injunctive relief as follows:

> IT IS . . . ORDERED AND ADJUDGED that defendants are enjoined from using the word "Singh" in any of their business names as the only identifying name to describe the type of service being offered; defendants may use the word "Singh" in the name of a business entity provided that the name is used as the surname given to defendants in conjunction with their full names.

The Judgment also departed from the July Order in that it did not explicitly dismiss the claims against Takhar.

Darshan and Pargat filed a motion to clarify or amend the Judgment under Rules 59(e) and 60 of the Federal Rules of Civil Procedure. They argued that, in light of the district court's statement that it was "confirm[ing] the arbitrator's [January Award], precisely as written, including as clarified by the arbitrator's [July Order]," the Judgment had erred by "revert[ing] back to the arbitrator's [January Award] with respect to injunctive relief, and not as it was later clarified." The district court offered no explanation for the discrepancy between its Confirmation Order and its Judgment. Instead, it summarily denied the post-judgment motion, stating only that the Judgment needed no clarification and that Darshan and Pargat "have not shown any proper grounds for seeking an amendment of the [J]udgment." Darshan and Pargat timely appealed that denial.

## II.

The Federal Rules grant district courts broad discretion to "alter or amend a judgment" or to grant "relief from a judgment or order." Fed. R. Civ. P. 59(e), 60(a) & (b). We review the disposition of motions brought under Rules 59(e) and 60 for abuse of that discretion. *Am. Civil Liberties Union of Ky. v. McCreary County*, 607 F.3d 439, 450 (6th Cir. 2010); *Braun v. Ultimate Jetcharters, LLC*, 828 F.3d 501, 515 (6th Cir. 2016). The district court abuses its discretion when it "fails to consider the applicable legal standard or the facts upon which the exercise of its discretionary judgment is based." *Braun*, 828 F.3d at 515 (quoting *In re Walter*, 282 F.3d 434, 440 (6th Cir. 2002)). Likewise, the court abuses its discretion when it "relies on clearly erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Pittington v. Great Smoky Mtn. Lumberjack Feud, LLC*, 880 F.3d 791, 799 (6th Cir. 2018).

On appeal, we identify important issues with the Judgment that could have warranted relief. Accordingly, Darshan and Pargat's post-judgment motion deserved careful review on the merits.

But the court below summarily denied the motion and we find ourselves unable to review its resolution of the merits without further explanation from the district court.

A.

Darshan and Pargat asked the court below "for an order clarifying and amending the injunctive relief" set forth in its Judgment. The district court's Confirmation Order stated that it would "confirm the arbitrator's [January Award], precisely as written, including as clarified by the arbitrator's [July Order]." But the final Judgment differed from the arbitrator's July Order in two respects—it entered injunctive relief more restrictive than that contained in the July Order and it failed to dismiss Takhar from the proceedings. To the extent that these discrepancies between the court's Confirmation Order and its Judgment were merely inadvertent, Rule 60 provided a proper channel for relief. "[A] court properly acts under Rule 60(a) when it is necessary to 'correct mistakes or oversights that cause the judgment to fail to reflect what was intended at the time of trial.'" *Walter*, 282 F.3d at 441. And Rule 60(b) allows amendment of a judgment on the ground of "mistake" or "inadvertence." Fed. R. Civ. P. 60(b)(1). The district court denied Darshan and Pargat's Rule 60 motion, however, without explanation. We think one was warranted.

Singh Management offers no persuasive argument that the Judgment's language is consistent with the July Order. It suggests that the Confirmation Order and Judgment are "precisely in accord" because the July Order was just a "general statement of the scope of injunctive relief," whereas the January Award is the "more specific articulation." But this position directly contradicts the stance Singh Management took before the district court, where it argued that "the injunctive relief described in [the July Order] is *incompatible* with the [January Award] and insufficient" to protect its rights. We generally consider an argument forfeited when a party has argued "the exact opposite . . . in its briefs below." *Guyan Int'l, Inc. v Prof. Benefits Adm'rs,*

*Inc.*, 689 F.3d 793, 799 (6th Cir. 2012). Even were we to consider this argument on the merits, it would fail. Singh Management's belated attempt to reconcile the January Award and July Order asks us to ignore the extensive motions practice before the arbitrator, in which the parties submitted multiple proposed orders and argued in detail over this precise issue: whether the prospective injunction should prohibit Darshan and Pargat from using the 'Singh' name except in conjunction with their given names, or whether less-restrictive relief would be adequate to protect Singh Management's interests. Considering this background, it seems highly unlikely that the July Order was intended to be merely a generalized summary of the January Award. And the district court's Confirmation Order must likewise be read in this context.

Darshan and Pargat also argue that the Judgment's failure to dismiss Takhar was inconsistent with the July Order. As with the first inconsistency, Singh Management has failed to persuade us that the Confirmation Order and Judgment can be reconciled on this point. In fact, given Singh Management's constantly shifting arguments on this issue, it seems Singh Management has failed even to persuade *itself* that the two are consistent. Opposing Darshan and Pargat's post-judgment motion below, Singh Management argued that Takhar "was dismissed in the [a]rbitration, so there is no need for clarification." It reversed course in its briefing before this court, taking the position that, notwithstanding the July Order, the district court had deliberately and "properly determined that the permanent injunction should extend to [Takhar] as well." Then, at oral argument, Singh Management returned to its first theory, asserting that Takhar was not actually bound by the district court's injunction. Under this latest version, Takhar had been 'constructively dismissed' from the federal court action by virtue of the arbitrator's dismissal in the July Order.

There is an argument that one or both versions of Singh Management's argument have been forfeited. *See Guyan Int'l*, 689 F.3d at 799. But addressing them on the merits, neither persuades. The 'constructive dismissal' theory is clearly inconsistent with Singh Management's principal position that the July Order was "merely advisory"—why would the July Order be advisory regarding the scope of injunctive relief but binding as to who would be enjoined? And, more importantly, recognizing a 'constructive dismissal' in this manner would be incompatible with the bedrock principle that arbitration awards are not self-enforcing. *See Mulhall v. UNITE HERE Local 355*, 618 F.3d 1279, 1293 (11th Cir. 2010) ("[A]rbitration awards are not self-enforcing, [but] . . . must be given force and effect by being converted to judicial orders . . . ." (alterations in original) (quoting *D.H. Blair & Co., Inc. v. Gottdiener*, 462 F.3d 95, 104 (2d Cir. 2006)). In other words, since there is no judicial order reflecting Takhar's dismissal, there has been no dismissal.

As to Singh Management's opposite theory, we cannot know whether the district court made a conscious choice to enjoin Takhar because there is no record of it in the district court's decisions. "Courts must closely tailor injunctions to the harm that they address." *CFE Racing Prods., Inc. v. BMF Wheels, Inc.*, 793 F.3d 571, 595 (6th Cir. 2015) (quotation marks omitted); *see also Amoco Prod. Co. v. Village of Gambell*, 480 U.S. 531, 542 (1987) (stating that before granting injunctive relief "a court must . . . consider the effect *on each party* of the granting or withholding of the requested relief" (emphasis added)). Here, however, the arbitrator made no findings against Takhar, either concerning personal acts of infringement or his relationship to Darshan and Pargat, and neither did the district court, so far as we can tell. In such circumstances, subjecting Takhar to the injunction could constitute a "manifest injustice." *Mich. Flyer LLC v. Wayne Cty. Airport Auth.*, 860 F.3d 425, 431 (6th Cir. 2017). If the district court intended that

Takhar be subject to the trademark injunction, it should explain, on remand, the basis for its determination.

In sum, we can perceive no way to reconcile the district court's Judgment with its Confirmation Order, and instead are left wondering which of the two documents reflected the district court's intent: was it the Confirmation Order stating that it "shall and hereby does confirm the [January Award] precisely as written, including as clarified by the arbitrator's [July Order]" or the Judgment enjoining Darshan, Pargat, and Takhar from using the Singh name, except "in conjunction with their full names"? On remand, the district court should clarify its ruling.

B.

Even if the district court intended to grant injunctive relief on different terms than it expressed in its Confirmation Order, that would not eliminate all difficulty. As we explain above, to the extent that the district court intended to subject Takhar to the injunction, the absence of factual findings for bringing him within the injunction's scope could result in "manifest injustice." *See Mich. Flyer*, 860 F.3d at 431. And as we explain below, to the extent that the district court intended to order injunctive relief more restrictive than that expressed in the July Order, it may have committed a "clear error of law." *Id.* Either would be grounds to alter or amend the Judgment under Rule 59(e). *See id.*

Singh Management takes the position that the Judgment reflected the district court's intent. It argues that the July Order was "merely advisory" anyway because the arbitrator lacked authority to define the injunction's scope. Since the district court retained authority over the scope of injunctive relief, Singh Management asks us to affirm the Judgment because the district court "did not err in granting an injunction limiting the Trademark Defendants to using the SINGH Mark in conjunction with their full names." If the Judgment does indeed reflect the district court's intent,

this would be a plausible defense of it, particularly since the district court specifically "retain[ed] jurisdiction to entertain post-arbitration motions . . . for injunctive relief" when it ordered arbitration in the first place.

On the other hand, Darshan and Pargat have a not-insubstantial argument that Singh Management waived any objections to the arbitrator's jurisdiction by participating, without objection, in seven months of back-and-forth before the arbitrator over the scope of injunctive relief. *See, e.g.*, *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003) ("A party may waive its objection to the jurisdiction of the arbitrators by acquiescing in the arbitration with knowledge of the possible defect."); *Wells Fargo Bank, N.A. v. WMR e-PIN, LLC*, 653 F.3d 702, 711 (8th Cir. 2011) (stating that a party who "willingly and without reservation allow[ed] an issue to be submitted to arbitration" cannot "later argue that the arbitrator lacked authority to decide the matter").

If Darshan and Pargat are right, then the July Order was a valid modification of the January Award under Michigan law, *see* Mich. Comp. Laws § 691.1700(1) & (5), which was the agreed-upon framework for the arbitration proceedings, *see Volt Info. Scis., Inc. v. Bd. of Trs. of the Leland Stanford Junior Univ.*, 489 U.S. 468, 478–79 (1989) (holding that the FAA allows parties to contract to conduct arbitration proceedings under state procedural rules). It would follow that the district court's failure to enter an injunction precisely matching the July Order's language would be an unauthorized vacatur of a confirmable arbitration award. *See* 9 U.S.C. § 9 (stating that a district court "must grant . . . an order [confirming an arbitration award] unless the award is vacated, modified, or corrected as prescribed in sections 10 and 11 of [the FAA]"); *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 582 (2008). And if such an implicit vacatur occurred, it would be a "clear error of law." *Mich. Flyer*, 860 F.3d at 431.

* * *

We find ourselves faced with a dilemma in this appeal. The district court's Confirmation Order is facially inconsistent with its Judgment, yet the district court summarily dismissed Darshan and Pargat's motion to clarify or amend. And if Singh Management is correct that the Judgment reflects the district court's real intent, there is a significant possibility that the district court abused its discretion. Nevertheless, we cannot draw a conclusion either way without the benefit of the district court's analysis, and so we send the matter back to the court below. This time around, for the litigants' benefit and to assist any further appellate review, the district court should justify its decision with reasoned explanation.

For the foregoing reasons, we VACATE the denial of the motion and REMAND for further proceedings consistent with this opinion.

NALBANDIAN, Circuit Judge, concurring. The district court's decision below did not adequately address the inconsistencies between its order and judgment enforcing the arbitration award. On that point (and the decision to send this case back down) I fully agree with the majority opinion. I write separately because I question whether Singh Management waived its right to have the district court decide on the appropriate injunctive relief. Without a waiver, the district court must exercise its own judgment to fashion an injunction that adequately enforces the merits of the arbitrator's ruling. And though I realize that the majority does not resolve this issue definitively, I'm skeptical enough of the claim that it justifies some elaboration.

We should not infer a waiver of contractual rights lightly. A party can "waive its objection to the jurisdiction of the arbitrators by acquiescing in the arbitration with knowledge of the possible defect." *Nationwide Mut. Ins. Co. v. Home Ins. Co.*, 330 F.3d 843, 846 (6th Cir. 2003). But the burden rests on the party claiming the waiver. *Id*. Otherwise, we must enforce an arbitration agreement according to its terms. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). And everyone agrees on the terms here: the arbitration agreement reserved equitable claims like injunctive relief for the district court. *See* R. 43-5, PageID 1861; R. 60, PageID 2992, 2994. So to avoid those terms, a court must find that Singh Management waived its rights under the agreement by acquiescing to the arbitrator's jurisdiction on this issue.

I am skeptical that Singh Management's conduct here amounts to that kind of acquiescence. After the arbitrator issued the January Award, Singh Management continued to assert that the district court retained jurisdiction over equitable relief. *See* R. 70-14, PageID 3602, 3603. That would have been the ideal time for Singh Management to waive its rights. The arbitrator's January Award described precisely the kind of injunctive relief that Singh Management would have preferred. Yet when Darshan and Pargat Grewal asked the arbitrator to clarify its

ruling, Singh Management submitted a proposed order reaffirming its position that the district court retained its jurisdiction over the equitable claims. *Id.*

After that, the arbitrator rejected both proposed orders and asked for new ones. Singh Management's second order admittedly looks much more ambiguous. *See* R. 70-17 (sealed). Rather than having the district court enter the order on injunctive relief, the second proposal would have had the arbitrator set the scope of the injunction and left the district court authority only to "enforce[e] the Award, this Order, and rul[e] on any further issues relating to the Federal Case or relief sought by the parties and not addressed herein." *Id.* at PageID 3626. But Singh Management submitted this order only *after* making clear on the record that it believed the district court retained its jurisdiction over this issue and *after* the arbitrator rejected its proposal.

To find a waiver here would require that Singh Management repeatedly make the same objections or reservations simply out of persistence from the other side. The arbitration agreement was clear. The initial award from the arbitrator was clear. And Singh Management's reservation-of-rights in its first proposed order was clear. That seems to be enough to enforce the agreement as written.

That said, even if Singh Management did not waive, it does not follow that the district court has free rein to decide on the appropriate scope of injunctive relief. In a case like this where the legal issue was resolved by a separate adjudication, the court must follow that decision when fashioning equitable relief. *See In re Lewis*, 845 F.2d 624, 629 (6th Cir. 1988) (explaining that a judge's decision on equitable relief must conform to the jury's determination of the legal claim). While the arbitration award does not strip the court of its "traditional equitable power to craft permanent injunctions tailored to the needs of each case," *Innovation Ventures, LLC v. N2G Distrib., Inc.*, 763 F.3d 524, 545 (6th Cir. 2014), it does dictate what the scope of relief might look

like. District courts cannot alter an arbitrator's decision under the guise of crafting equitable relief. And the risk of that seems particularly high in a case like this, when the parties have substantial disagreement over the scope of the arbitrator's decision.

These are issues best left for the district court on remand. The district court can evaluate whether Singh Management waived its right to have the court decide on equitable relief. And (no matter how it answers that question) it can decide on an appropriate injunction. Resolving both issues with a more complete explanation will leave the reviewing court in a better position to adjudicate any remaining disputes. So I fully join the majority decision to send this matter back down to the lower court.