RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2001 FED App. 0054P (6th Cir.)
File Name: 01a0054p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

VIVIAN D. REDDING,
      *Plaintiff-Appellant,*

     *v.*

BEVERLY ST. EWARD, Detroit
Police Officer,
      *Defendant-Appellee.*

No. 99-1793

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
No. 98-72748—Victoria A. Roberts, District Judge.

Argued: November 2, 2000

Decided and Filed: March 1, 2001

Before: KRUPANSKY, BATCHELDER, and GILMAN,
Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Frank G. Becker, FRANK G. BECKER &
ASSOCIATES, Southfield, Michigan, for Appellant. Linda
D. Fegins, CITY OF DETROIT LAW DEPARTMENT,
Detroit, Michigan, for Appellee. **ON BRIEF:** Frank G.
Becker, FRANK G. BECKER & ASSOCIATES, Southfield,

Michigan, for Appellant.   Linda D. Fegins, CITY OF DETROIT LAW DEPARTMENT, Detroit, Michigan, for Appellee.

————————

## OPINION

————————

ALICE M. BATCHELDER, Circuit Judge. Plaintiff Vivian Diane Redding appeals the district court's grant of summary judgment to the defendant, Beverly St. Eward, in this action brought under 42 U.S.C. § 1983 and under the constitution of the state of Michigan.  Redding claims that St. Eward, acting under color of law, caused Redding to be arrested without probable cause, in violation of the Fourth and Fourteenth Amendments to the United States Constitution as well as in violation of the Michigan Constitution. Because we hold that the district court did not err in concluding that St. Eward did not act under color of law, we affirm the judgment of the district court.

## I. FACTS

This case involves a love triangle among the plaintiff Vivian Redding, a man by the name of Charles McCrary, and defendant Beverly St. Eward, a Detroit police officer. Redding had been involved in a long-term romantic relationship with McCrary, which apparently had been broken off sometime earlier.  McCrary began dating St. Eward about four months before the incident that gave rise to this lawsuit.

On February 2, 1995, around 1:00 a.m., Redding went—uninvited—to McCrary's home, where she began ringing the doorbell and knocking on the door. McCrary was not at home, but St. Eward and her nine-year-old son were spending the night.  Becoming concerned with Redding's prolonged knocking at the door, St. Eward called 911. Before the police arrived, however, Redding left to look for McCrary. She found him at the bowling alley where he customarily bowled, but he was apparently not pleased to see her and

that were not briefed by either party.  In St. Eward's motion for summary judgment, she argued that (1) there was no deprivation of Redding's constitutional rights, and (2) even if there was a deprivation, St, Eward's actions were protected by qualified immunity. Redding submitted counter arguments to the points raised in the motion, but the district court granted summary judgment on the ground that Redding's claim failed because St. Eward was not acting under color of law.  While summary judgment was prompted by the defendant's motion, the reason for granting summary judgment was not one argued by the parties.

Ideally, Redding should have been given an opportunity to brief the color-of-law issue before the district court; however, at this point, any deficiency in the lower court's procedure is harmless error.  Redding knew she was required to prove every element of her §1983 claim; one of those elements was that St. Eward acted under color of law.  She failed to provide any evidence tending to establish that element.  Furthermore, Redding has now fully briefed the color-of-law issue before this court, and she has not claimed that there is evidence tending to establish that the facts are genuinely in dispute with regard to that issue.  We review a grant of summary judgment de novo.  We have carefully considered all of Redding's arguments that St. Eward was acting under color of law and, as discussed fully above, we find them to be without merit.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the judgment of the district court.

equivalent to that of any private citizen calling for police assistance." This record presents no genuine issue of fact material to the determination of whether St. Eward was acting under color of state law. The record demonstrates that she was not. *See also Hughes v. Meyer*, 880 F.2d 967, 972 (7th Cir. 1989) (holding that game warden's act of describing his encounter with plaintiffs to law enforcement officers was functionally equivalent to that of any private citizen reporting the details of an alleged criminal act).

2.   *Redding's common law tort claim.* Citing the common law of torts, which provides that concerted effort to commit a tort renders all the conspirators jointly and severally liable, Redding argues that St. Eward and the other officers had an agreement and conspired to arrest Redding. Because the acts of a private citizen may be actionable under §1983 if the private citizen acts in concert with the police, *see Cooper v. Parrish*, 203 F.3d 937, 952 n.2 (6th Cir. 2000), St. Eward could conceivably be held liable even though she was not acting under color of law. Redding, however, presents no evidence of any agreement, tacit or otherwise, between St. Eward and the other officers. Indeed, the evidence directly to the contrary—the unrefuted affidavit of the arresting officer establishes that he was not influenced in any way by St. Eward in deciding to arrest Redding. This argument also is meritless.

B.   *Redding's claim under the Michigan state constitution.*

Redding also contends that St. Eward violated her rights under the Michigan state constitution, specifically, the rights to be free from unreasonable seizures and to receive a fair investigation. Because St. Eward neither arrested Redding nor caused her to be arrested, nor conducted any investigation, we need not reach this question.

C.   *Did the district court abuse its discretion in granting summary judgment?*

Redding argues strenuously that the district court "ambushed" her by granting summary judgment on grounds

cursed at her. Redding left the bowling alley and went back to McCrary's house.

Upon returning to the home around 2:00 a.m., Redding again began knocking on the door. St. Eward called 911 a second time. A few minutes later, Detroit police officers Ernest Wilson and Paul Wells arrived and saw Redding, armed with a steel pipe, kicking the door of McCrary's house. The officers saw Redding toss the pipe into some nearby bushes; they recovered it, arrested Redding and charged her with attempted home invasion. It is undisputed that St. Eward herself did not arrest Redding.

Redding contends that St. Eward falsely reported to the police officers that Redding was attempting to break into McCrary's home, urged the on-duty officers to arrest her, and commented that Redding would serve a lot of time in prison. Redding argues that the lack of any physical damage to the home belies the police officers' conclusion that she was attempting to break into McCrary's home. St. Eward admits that she called 911 twice and identified herself as a Detroit police officer to the 911 operators. However, St. Eward disputes the claim that she improperly used her position as a police officer to cause Redding to be arrested without probable cause. The arresting officer, Ernest Wilson, submitted an affidavit averring that he arrested Redding because he had probable cause to believe she had committed a felony and that St. Eward did not influence the arrest in any way. The record contains no evidence to the contrary.

## II. ANALYSIS

The district court granted St. Eward's motion for summary judgment because it found that she was not acting under color of law when she called 911 to report the incident taking place on February 2, 1995. We review de novo a district court's grant of summary judgment. *See Allen v. Michigan Dep't of Corrections*, 165 F.3d 405, 409 (6th Cir. 1999). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any

material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). When reviewing a motion for summary judgment, we must view the evidence and any inferences that may be drawn from the evidence in the light most favorable to the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citing *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962) (per curiam)).

## A.   *Redding's cause of action under 42 U.S.C. §1983*

"To state a claim under §1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged violation was committed by a person acting under color of state law." *West v. Akins*, 487 U.S. 42, 48 (1988). The plaintiff must establish both that 1) she was deprived of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law. *See Simescu v. Emmet County Dep't of Soc. Services*, 942 F.2d 372, 374 (6th Cir. 1991). If a plaintiff fails to make a showing on any essential element of a §1983 claim, it must fail. *See id.* at 375.

1.   *Whether St. Eward acted under color of law*.  St. Eward is a Detroit police officer. It is undisputed that she did not herself arrest Redding; Redding contends, however, that but for St. Eward's alleged "false report" to the officers and her relationship with the police department in general, Redding would not have been arrested. The question therefore becomes whether St. Eward was acting under color of law when she called 911. We conclude that she was not.

The United States Supreme Court has held that acting under color of state law requires that the defendant in a §1983 action have exercised the power "possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law." *West*, 487 U.S. at 49. We have addressed the difficult question of whether a police officer is acting under color of law when, off duty, he acts as a private citizen. *See Stengel v. Belcher*, 522 F.2d 438 (6th

Cir. 1975). In *Stengel*, the officer was off duty, was out of uniform, was never identified as a police officer, and was socializing with friends at a bar. A fight broke out. The officer intervened and ultimately shot the three men involved in the brawl. We explained the factors involved in determining whether the officer was acting under color of law:

> [The officer] contends that the evidence shows that he was engaged in private social activity, was out of uniform and off duty and never identified himself as an officer. In other words, he contends that his actions were taken as a private citizen. Acts of police officers in the ambit of their personal, private pursuits fall outside 42 U.S.C. §1983 . . . . The fact that a police officer is on or off duty, or in or out of uniform is not controlling. "It is the nature of the act performed, not the clothing of the actor or even the status of being on duty, or off duty, which determines whether the officer has acted under color of law."

*Id.* at 440-41 (internal citations omitted).

After reviewing the facts in *Stengel,* we affirmed the jury's conclusion that the officer in that case did, in fact, act under color of law.

The *Stengel* analysis is directly applicable to the question presented here. Officer St. Eward and her young son were spending the night at Mr. McCrary's home. She was off duty, out of uniform, and, according to her testimony, asleep, when Redding began banging on the door and window. The sole nature of the act she performed was to report what she believed to be a criminal act—Redding's attempt to gain access to the dwelling in the middle of the night. St. Eward did not herself physically arrest, restrain or attempt to restrain Redding, nor did she direct the officers responding to the 911 call to arrest Redding, or in any way instruct them as to how they should perform their duties. As the district court rightly concluded, St. Eward's action in making the 911 calls and reports to the responding officers were "functionally