NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0241n.06

No. 10-5346

**UNITED STATES COURT OF APPEALS**
FOR THE SIXTH CIRCUIT

**FILED**

APR 18 2011

LEONARD GREEN, Clerk

RODNEY GRAVES,

      Plaintiff-Appellant,

v.

AMBER BOWLES; ELIZABETH CAPPS; U.S.
BANK, N.A.;
OFFICER JASON RICHARDSON, in his
individual and official capacity;
CAPTAIN JAMES DUFF, in his individual and
official capacity;
CAPTAIN DAVID GRAVES, in his individual
and official capacity;
SGT. JASON MORGAN, in his individual and
official capacity;
OFFICER JIMMY PEDIGO, in his individual
and official capacity;
DETECTIVE EDDIE LINDSEY, in his
individual and official capacity,
CITY OF GLASGOW, KENTUCKY;
TPR. THOMAS PYZIK;
TPR. WILLIAM SHUFFETT, II;
TPR. MICHAEL McILRATH;
TPR. DEWAN KELLY;
TPR. JOHN NOKES;
TPR. JEREMY SLINKER;
TPR. NORMAN PRESTON;
TPR. CHAD PEERCY;
TPR. BRUCE BUTTON;
TPR. CHAD CARROLL; and
TPR. ANTHONY FANNIN,

      Defendants-Appellees.

ON APPEAL FROM THE
UNITED STATES DISTRICT
COURT FOR THE WESTERN
DISTRICT OF KENTUCKY

_____ /

Before:        MARTIN, SUHRHEINRICH, and KETHLEDGE, Circuit Judges.

BOYCE F. MARTIN, JR., Circuit Judge.  Plaintiff-appellant Rodney Graves was arrested under the mistaken belief that he robbed the U.S. Bank in Glasgow, Kentucky on August 10, 2007. The Glasgow police conducted the investigation that resulted in the warrant for Graves's arrest, and the Kentucky State Police Special Response Team carried out that arrest on August 15, outside of Glasgow's jurisdiction.  The next day, police learned that Graves was not the U.S. Bank robber; the actual robber had just robbed another bank in Paducah, Kentucky that day.  Graves was released that day and eventually filed suit in United States District Court for the Western District of Kentucky against the City of Glasgow, six members of the Glasgow police, and eleven members of the Kentucky State Police claiming excessive force in violation of 42 U.S.C. § 1983.  He also filed multiple state tort claims against U.S. Bank and two of its employees concerning their roles in the criminal investigation.  The district court granted all Defendants summary judgment and also denied Graves's motion to alter or amend the judgment.  Graves appeals both decisions.  For the following reasons, we **AFFIRM**.

## I.  DISCUSSION

The district court's memorandum opinions and orders provide excellent recitations of the underlying facts.  *Graves v. Bowles*, No. 1:07-CV-207-M, 2010 WL 1141216 (W.D. Ky. Mar. 22, 2010); *Graves v. Bowles*, No. 1:07-CV-207-M, 2010 WL 497719 (W.D. Ky. Feb. 5, 2010); Therefore, we will only supplement those factual synopses here as needed.

Graves asserts multiple claims on appeal, some of which are repetitive.  In summary, his claims are that the district court: (1) applied the incorrect summary judgment standard because

multiples issues of material fact existed as to whether Graves was wrongfully arrested; (2) applied the incorrect pleading standard to Graves's complaint when it did not read the complaint to include a charge of wrongful arrest; (3) improperly dismissed his claim for excessive force; (4) improperly dismissed his claim against the City of Glasgow; (5) improperly dismissed his claims against the U.S. Bank Defendants; (6) improperly granted a protective order to prohibit the parties from deposing Darrell Pickett, Mayor of Glasgow; and (7) improperly denied his motion to amend or alter the judgment.

## A.     Summary Judgment

### 1.     Standard of Review

This court reviews a district court's grant of summary judgment de novo. *Jakubowski v. Christ Hosp., Inc.*, 627 F.3d 195, 200 (6th Cir. 2010). Summary judgment is appropriate when "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2) (2009) (amended Dec. 2010). A genuine issue of material fact exists if a reasonable juror could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "When considering a motion for summary judgment, the district court must view the evidence in the light most favorable to the nonmoving party." *Jakubowski*, 627 F.3d at 200.

### 2.     Wrongful Arrest

Graves's first two claims on appeal are essentially the same: that he was wrongfully arrested without probable cause, and that the district court ignored evidence supporting this claim in granting

summary judgment to the Defendants. This wrongful arrest claim more specifically attacks alleged faults of specific Glasgow Police Defendants in conducting the investigation. The district court did not address a wrongful arrest claim, noting that Graves presented evidence regarding the shortcomings of the Glasgow Police Department's investigation, but deciding that the only constitutional violation that Graves had linked to any specific defendant was the use of excessive force. We are not wholly convinced of the district court's conclusion. Nevertheless, even assuming arguendo that Graves did establish a link between a wrongful arrest claim and the City of Glasgow and specific Glasgow Police officers, that claim would fail because the Glasgow Police Defendants had probable cause to arrest Graves.

To state a section 1983 claim, Graves must establish that a person acting under the color of state law deprived him of a right secured by the Constitution or federal law. *Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). Furthermore, because the alleged violation is wrongful arrest, Graves must establish that the police lacked probable cause. *Miller v. Sanilac Cnty.*, 606 F.3d 240, 250 (6th Cir. 2010). "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Id.* (citation omitted). "The existence of probable cause in a § 1983 action presents a jury question, unless there is only one reasonable determination possible." *Wilson v. Morgan*, 477 F.3d 326, 334 (6th Cir. 2007) (citation omitted).

Here, the only reasonable determination is that the Glasgow Police and Special Response Team had probable cause to believe that Graves committed the bank robbery at the time they obtained the arrest warrant and when Graves was arrested. Multiple people identified Graves as the

robber. Graves's cousin, defendant-appellee Captain David Graves, identified Graves in surveillance photographs from the bank, and did so without solicitation or knowing the background behind the photographs. Furthermore, two bank employees, defendants-appellees Amber Bowles and Elizabeth Capps, saw the robber during the robbery and identified Graves in photographic line-ups as the robber. Moreover, two other people, Graves's former landlord and a local restaurant employee who had served Graves, identified Graves as the man in the surveillance photos. These multiple identifications are sufficient for a prudent man to believe that Graves was the robber. *See, e.g.*, *Ahlers v. Schebil*, 188 F.3d 365, 370 (6th Cir. 1999) ("A law enforcement officer is entitled to rely on an eyewitness identification to establish adequate probable cause with which to sustain an arrest.") (citation omitted). Graves finds fault with the Glasgow Police's investigation. However, we must ask what the police actually *knew*, *see id.* at 371, 373-74, and Graves cannot refute the identifications. Accordingly, Graves's wrongful arrest claim fails.

### 3. Excessive Force

Graves's third claim is that the district court improperly dismissed his excessive force claim on grounds of qualified immunity. He first argues that the State Police unreasonably used excessive force when they deployed a "flash-bang" device that broke the rear windshield of his car, surrounded his car with weapons drawn, broke two of his car windows, forcibly removed him from his car, and handcuffed him. Second, he argues that the Glasgow Police used excessive force by utilizing the State Police's Special Response Team. He claims that both groups of Defendants should have known that the Special Response Team was unnecessary based on his prior compliance with requests to come in for questioning.

A defendant is entitled to qualified immunity unless: (1) the defendant violated a constitutional right; and (2) the right was clearly established. *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815-16 (2009). We may consider the circumstances of the case and use our discretion to decide which prong to address first. *Id.* at 818.

The issue of whether the force used by police in carrying out an arrest is excessive invokes the reasonableness standard of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). That reasonableness standard requires us to balance the plaintiff's interest to be free from unlawful seizure with the government's interests, one of which is safety of its police officers. *Id.* at 396. "[T]he right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id.* (citing *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968)). Whether that coercion is reasonable depends on a totality of the circumstances, such as "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* (citing *Tennessee v. Garner*, 471 U.S. 1, 8-9 (1985)).

Here, the force used by the Glasgow Police and Special Response Team was not unreasonable because of their interest in protecting themselves. The suspect who robbed the bank carried a gun, which gave the Glasgow Police and Special Response Team reason to suspect that he might be armed when they tried to arrest him. They also knew that Graves had brandished a gun in a recent domestic disturbance, and had been involved in prior assaults. Additionally, they knew that Graves had indicated an unwillingness to turn himself in, and had yelled and swore at Glasgow Police in prior encounters. They further knew that Graves used drugs at times, causing him to

possibly be unpredictable. The totality of these facts gave the Glasgow Police and Special Response Team reason to believe that Graves might be dangerous when they tried to arrest him, and explain why it was reasonable for them to use a flash-bang device and surround Graves's car. *Cf. Dudley v. Eden*, 260 F.3d 722, 727 (6th Cir. 2001) (holding that "it was reasonable for [defendant] to conclude that [plaintiff] posed a serious threat to himself and others" because of "[plaintiff]'s bank robbery, his refusal to comply with the commands of armed policemen, his attempt to evade arrest, and his reckless driving," even though defendant did not actually know of plaintiff possessing a weapon in the past or during the robbery).

These facts might not have been sufficient to warrant the Special Response Team's next steps of breaking Graves's car windows and pulling him from the car by force and handcuffing him. However, after the Special Response Team surrounded his car, they ordered him to cover his face with his hands, and Graves failed to comply. Furthermore, all parties agree that Graves moved his hand toward the car console at that time. At that point, the Special Response Team knocked out his windows and yelled at him again to cover his face. Graves admits he still did not comply after hearing their commands and responded, "Whatever, motherfuckers." The Special Response team then removed Graves from the car, and handcuffed him. These additional measures were reasonable in light of the Special Response Team's belief that Graves might have a weapon in the car. His refusal to comply with orders and unexpected motion toward his console caused the Special Response Team to believe that Graves may be reaching for a weapon. *Cf. id.*

We recognize that this event was in no way pleasant or cordial, but the Defendants used a reasonable amount of force to protect themselves from a suspect whom they believed to be armed

and dangerous. Accordingly, the district court correctly dismissed Graves's excessive force claim on grounds of qualified immunity.

### 4. The City of Glasgow as a Defendant

Graves's fourth claim concerns his claims against the City of Glasgow for failing to train its employees, the Glasgow Police Defendants. A local government may be liable pursuant to section 1983 if its employees or agents injure the plaintiff through "execution of [the] government's policy or custom." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). However, we have decided that Graves's claims against the Glasgow Police Defendants fail because they did not violate his constitutional rights. Therefore, his claims against the City of Glasgow fail.

### 5. U.S. Bank Defendants

Graves filed numerous state law claims against U.S. Bank and two of its employees, Bowles and Capps, who were present for the robbery. He argues that Bowles's and Capps's erroneous identification of him as the bank robber constituted defamation, defamation per se, libel, libel per se, slander, slander per se, negligent false arrest, negligent false imprisonment, and the tort of outrage. The district court granted U.S. Bank, Bowles, and Capps summary judgment on all counts.

In the Commonwealth of Kentucky, "the public interest requires that expressions of suspicions founded upon facts detailed and prudently made in good faith and as confidentially as circumstances will permit, to aid in detecting felonies do not give rise to an action for slander [or libel] against the person expressing his suspicions." *Dossett v. N.Y. Mining & Mfg. Co.*, 451 S.W.2d 843, 846 (Ky. 1970) (citation omitted). The Kentucky Supreme Court recognized in *Tucker v.*

*Kilgore*, 388 S.W.2d 112, 114-15 (Ky. 1965), that these expressions are entitled to qualified

privilege if they are:

> made in good faith, without actual malice, with reasonable or probable grounds for believing them to be true, on a subject matter in which the author of the communication has an interest, or in respect to which he has a duty, public, personal, or private, either legal, judicial, political, moral, or social, made to a person having a corresponding interest or duty.

Statements made in the course of work or for the enforcement of law warrant this privilege. *See*

*Dossett*, 451 S.W.2d at 846. Bowles and Capps identified Graves as part of a police investigation

into a dangerous crime. They did so based upon their recollection of the robber's appearance, and

without any kind of articulable malice. Therefore, Graves's various defamation, libel, and slander

claims all fail.

Furthermore, the rest of his claims against the U.S. Bank Defendants fail as well. It is

unclear that Graves has alleged a duty owed to him by the U.S. Bank Defendants, especially in light

of the privilege afforded to good faith statements made to law enforcement. However, assuming that

the U.S. Bank Defendants did owe him a duty in this situation to not make reckless statements to

police, Graves has failed to allege any breach of this duty. The U.S. Bank Defendants identified

Graves as the robber in good faith and based on the events they actually witnessed. Therefore,

Graves's negligence claims fail. Additionally, his claim of outrage fails where the U.S. Bank

defendants were assisting a police investigation in good faith. *See Goodman v. Goldberg &*

*Simpson, P.S.C.*, 323 S.W.3d 740, 746 (Ky. App. 2009) (explaining that the tort of outrage, also

referred to as intentional infliction of emotional distress, requires that the defendant's intentional or

reckless conduct "must be outrageous and intolerable in that it offends against the generally accepted

standards of decency and morality"). Accordingly, the district court did not err in granting summary judgment to the U.S. Bank Defendants.

**B.      The Protective Order for Mayor Pickett**

Graves claims that the district court improperly issued a protective order prohibiting him from deposing Mayor Pickett during discovery. We review a district court's decisions regarding discovery matters for abuse of discretion. *Dortch v. Fowler*, 588 F.3d 396, 400 (6th Cir. 2009) (citations omitted). Reversal is proper "only if we are firmly convinced of a mistake that affects substantial rights and amounts to more than harmless error." *Id.* (citation and internal quotation marks omitted).

A district court may "protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense" by issuing a protective order "forbidding . . . discovery" if the court has "good cause." Fed. R. Civ. P. 26(c)(1)(A). Here, the district court issued the protective order after concluding that Mayor Pickett could not provide any information relevant to Graves's claims. Mayor Pickett submitted affidavits averring that he had no personal knowledge of the events or investigation underlying the case. Graves responded that Mayor Pickett could provide valuable testimony because he was formerly the chief of the Glasgow Police, although not during Graves's mistaken arrest, and had previously demanded the resignation of Glasgow Police Chief Gary Bewley for reasons unrelated to Graves's case.

On appeal, Graves argues that the protective order was improper because Pickett was mayor, "a career law enforcement officer and former police chief of the [C]ity of Glasgow, and "specifically knowledgeable about the facts of this case, as he was quoted in the local paper as having such

knowledge." We disagree that the order was improper. The parties briefed the issue of the protective order before the district court issued the order. This gave Graves an opportunity to rebut Mayor Pickett's affidavits. However, he could not refute Pickett's lack of relevant knowledge regarding the case, and even today, he has failed to explain to us precisely what facts Mayor Pickett may possibly reveal. Accordingly, the district court did not abuse its discretion in issuing the protective order after finding that Mayor Pickett could not provide relevant testimony.

**C.      Motion to Alter or Amend**

Following the district court's grant of summary judgment to Defendants, Graves filed a motion to alter or amend the judgment pursuant to Rule 59(e). We usually review a denial of a Rule 59(e) motion for abuse of discretion, but we apply de novo review when the Rule 59(e) motion seeks reconsideration of a grant of summary judgment. *ACLU of Ky. v. McCreary Cnty., Ky.*, 607 F.3d 439, 450 (6th Cir. 2010) (citation omitted).

"A court may grant a motion to alter or amend judgment only if there was '(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in controlling law; or (4) a need to prevent manifest injustice.'" *Id.* (citation omitted). Graves argues that the district court's judgment should be altered or amended because the district court took a view of the facts most favorable to the Defendants in granting them summary judgment, or, alternatively, because there was a question of material fact that should have been presented to a jury. He does not present any new facts or a change in the law. We have already considered this same argument above, and we concluded that the district court did not err in granting the Defendants summary judgment. Graves

presents no other argument in support of his motion to alter or amend. Accordingly, the district court

did not err in denying Graves's motion to alter or amend.

## II. CONCLUSION

For the foregoing reasons, we **AFFIRM** the district court's orders granting summary

judgment to Defendants and denying Graves's motion to alter or amend.