**NOT RECOMMENDED FOR PUBLICATION**
File Name: 20a0313n.06

No. 19-3803

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

|  |  |  |
|---|---|---|
| MARCUS NEWELL, | ) | **FILED** |
|  | ) | Jun 01, 2020 |
| **Plaintiff-Appellant,** | ) | DEBORAH S. HUNT, Clerk |
|  | ) |  |
| v. | ) |  |
|  | ) | **ON APPEAL** FROM THE |
|  | ) | THE UNITED STATES DISTRICT |
| CASEY HUEPENBECKER; HENRY | ) | COURT FOR THE NORTHERN |
| COUNTY, OH, BOARD OF | ) | DISTRICT OF OHIO |
| COMMISSIONERS, | ) |  |
|  | ) |  |
| **Defendants-Appellees.** | ) | **OPINION** |

**BEFORE: NORRIS, DONALD, and NALBANDIAN, Circuit Judges.**

**ALAN E. NORRIS, Circuit Judge.** On April 5, 2016, Casey Huepenbecker, a special deputy sheriff for Henry County, and Marcus Newell were receiving firearms training at a range operated by the City of Napoleon, Ohio. During a break, Huepenbecker asked for, and received, permission to clean his weapon. Shortly after cleaning the gun, he set it on a picnic table near where other trainees were relaxing. It fired and the bullet hit Newell in the back. The shot damaged his liver, cracked a vertebra, and caused the loss of his spleen.

No one disputes what happened. The only issue is where responsibility lies. As part of his quest for compensation, Newell filed a Section 1983 suit in federal court naming Huepenbecker, Henry County, its Commissioners, and the City of Napoleon as defendants. The complaint included a second cause of action under Ohio law for negligence.

With respect to the federal cause of action, the district court granted summary judgment to defendants Huepenbecker and the County while declining to exercise jurisdiction over the state-law claim.[1] This appeal followed. We now affirm.

## I.

Ohio Revised Code § 311.04 authorizes the appointment of deputy sheriffs. In Henry County, special deputies, which is the capacity in which defendant Huepenbecker served, performed a limited set of duties as opposed to regular deputies. *See* 1989 Op. Att'y Gen. No. 89-071, 2-323. Typical assignments included "parking duties and patrol at county-wide functions such as fairs." *Id.*

Approximately a year before the shooting, Huepenbecker had been appointed and sworn in as a special deputy by Henry County Sheriff Michael Bodenbender. Special deputies are required to complete the Ohio Peace Officer Training Academy ("OPOTA") firearms course before they can be authorized to carry a weapon or perform duties outside the presence of a fully certified deputy. (Page ID 446) (Rules and Regulations of the Henry County Sheriff's Auxiliary); 1989 Op. Att'y Gen. No. 89-071, 2-323. At the time of the accident, Huepenbecker was attending the police academy at Northwest State Community College to obtain his OPOTA certification. The County did not pay him for the time spent taking the course nor did it reimburse him for tuition. Plaintiff Newell was likewise enrolled it the program. The shooting occurred during one of the course sessions.

In Henry County, special deputies receive compensation and assignments from the County Sheriff's Auxiliary, a non-governmental organization, rather than from the Sheriff's Department.

---

[1] In an earlier order, the district court granted summary judgment to the City of Napoleon. That judgment has not been appealed.

Randy Hill served as the Auxiliary's only officer during the period at issue. In his deposition, he explained that there are two kinds of special deputies: those who have obtained OPOTA certification and those who had not. With respect to the non-certified deputies, "they are not allowed to work by themselves, not make arrests . . . they basically are there to provide assistance." These special deputies also do not carry a firearm. Sheriff Bodenbender noted during his deposition that "I have never had a special deputy make an arrest."

Moreover, Huepenbecker never received a paycheck from Henry County; he was paid by the Auxiliary. He knew that he would have to complete the OPOTA course to be considered for employment in the Sheriff's Department, which he acknowledged was his long-term goal. However, he had not told Hill or anyone in the Sheriff's Department that he was enrolled in the course. He also stated during his deposition that he believed neither Hill nor Sheriff Bodenbender "had any idea that [he was] at the Napoleon gun range on the day the shooting occurred."

## II.

In his amended complaint, plaintiff alleged that defendants deprived him of his right to due process under the Fourteenth Amendment and acted with deliberate indifference towards him. The district court provided the following analysis in granting summary judgment to defendants with respect to the Section 1983 claim:

> Liability arises under 42 U.S.C. § 1983 only if the defendant violated the plaintiff's federal rights while acting "under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988). "[A]cting under color of state law requires that the defendant . . . have exercised the power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Redding v. St. Eward*, 241 F.3d 530, 533 (6th Cir. 2001) (quoting *id.* at 49). As the Court of Appeals stated in *Waters v. City of Morristown*, 242 F.3d 353, 359 (6th Cir. 2001),
>
>> [t]he key determinant is whether the actor intends to act in an official capacity or to exercise official responsibilities pursuant to state law . . . . Accordingly, a defendant's private conduct, outside the course or scope of

3

his duties and unaided by any indicia of actual or ostensible state authority, is not conduct occurring under color of state law.

Under this standard, Huepenbecker clearly did not shoot Newell under color of state law. He did not injure Newell by abusing power he possessed as a volunteer sheriff's deputy, and he neither acted in an official capacity nor exercised official authority. The law-enforcement course was open to the public; the County did not authorize Huepenbecker to carry a gun; and the gun he used was not County-issued. Virtually anyone, County volunteer or not, could have discharged the bullet that struck Newell. Huepenbecker's actions were "functionally equivalent to [those] of any private citizen." *Redding*, 241 F.3d at 532–33 (holding that police officer did not act under color of state law when she called 911 during domestic dispute, even though she identified herself as an officer to the 911 operators). *See also Waters*, 242 F.3d at 359 (holding that city alderman's misconduct did not occur under color of state law because "he would have been in the same position to harass and abuse [the plaintiff] even if he had not been a city alderman"). *Cf. Stengel v. Belcher*, 522 F.2d 438, 439, 441 (6th Cir. 1975) (affirming determination that off-duty officer acted under color of state law, where officer shot three men (1) while intervening in dispute because of a duty imposed by police department (2) with a gun the department required him to carry). Newell emphasizes that the County required Huepenbecker to complete the course. This requirement, however, is insufficient to justify a finding that Huepenbecker acted under color of state law.

(Page ID 726-27) (references to record omitted). The court went on to hold that, because Huepenbecker did not act under color of state law, the County is likewise not liable under § 1983.

We recognize that we apply de novo review to the district court's grant of summary judgment and the reasoning that supports it. *Does 8-10 v. Snyder*, 945 F.3d 951, 961 (6th Cir. 2019) (citation omitted). However, having had the benefit of the parties' thoughtful briefs and oral arguments, we are convinced that the district court reached the correct conclusion. A recent decision by this court only reinforces our thinking. *Morris v. City of Detroit*, 789 F. App'x 516 (6th Cir. 2019). In that case, defendant Detroit police officer Jennifer Lee Adams attempted to collect a personal debt while on duty. An altercation ensued and defendant discharged her department-issued firearm. The bullet grazed one of the plaintiffs. Despite the fact that Adams was on duty, we upheld the district court's grant of summary judgment to Adams because she did not attempt "to use her status as a police officer advantageously during the altercation." *Id.* at 518.

Even the use of her city-issued revolver did not transform the case into one proceeding under color of state law. *Id.* at 519. A quick comparison of *Morris* to the appeal before us illustrates why plaintiff's federal cause of action fails. Unlike the officer in *Morris*, Huepenbecker used his own firearm and was not "on duty." Like Officer Adams, however, Special Deputy Huepenbecker's status as a government official played no role whatsoever in the events giving rise to the lawsuit. He had enrolled in the firearms course as a private citizen and was advancing his own interests at his own expense when the unfortunate accident occurred. *See Waters*, 242 F.3d at 359 ("Section 1983 is generally not implicated unless a state actor's conduct occurs in the course of performing an actual or apparent duty of his office, or unless the conduct is such that the actor could not have behaved as he did without the authority of his office."). For all of these reasons, we hold that Huepenbecker did not act under color of state law and is therefore entitled to summary judgment on the § 1983 claim lodged against him.

Having reached this conclusion, it follows that the County is likewise entitled to summary judgment. If one of its employees did not commit a constitutional violation, any such claim against it must also fail. *Morris*, 789 F. App'x at 519 (holding that constitutional liability requires more than that the municipality employs a tortfeasor). In this case, plaintiff's complaint included a state-law claim for negligence that would seem to be a more appropriate avenue of redress for his injuries. The district court declined to retain jurisdiction over that cause of action and dismissed it without prejudice.

## III.

The judgment is **affirmed**.