NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0044n.06

No. 23-1343

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Jan 30, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| MICHAEL GARAVAGLIA, | ) | |
| Plaintiff-Appellant, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF MICHIGAN |
| GOGEBIC COUNTY, JOSH ELIAS, ADAM ZAK, | ) | |
| ROSS SOLBERG, EVAN FEZATT, and | ) | OPINION |
| ALEXANDER SACKMANN, | ) | |
| Defendants-Appellees. | ) | |

Before: SILER, MATHIS, and BLOOMEKATZ, Circuit Judges.

BLOOMEKATZ, Circuit Judge. Michael Garavaglia called the police for help dealing with an alleged harasser. The responding officers ended up arresting Garavaglia instead, and he was subsequently prosecuted for threatening his alleged harasser with a firearm. Garavaglia filed suit after a jury acquitted him of any criminal wrongdoing. But his complaint does not contain enough facts to support any of his constitutional claims. So, the district court correctly dismissed his case, and we AFFIRM.

**BACKGROUND**

Garavaglia submitted his first amended complaint after the defendants attacked his original pleading as insufficient to support his constitutional claims. According to the complaint,[1] Garavaglia summoned the police to his home because a person named Kyle Bartlett was harassing and threatening him. When Gogebic County Sheriff's Deputies Adam Zak and Ross Solberg

---

[1] We refer to Garavaglia's operative pleading simply as the complaint.

arrived at the scene along with Michigan State Police Troopers Evan Fezatt and Alexander Sackmann, Bartlett flipped the script; he told the responding officers that it was Garavaglia who threatened him—with a gun no less—not the other way around. Josh Elias, who is Bartlett's friend and employed as an officer of the Gogebic County Sheriff's Department, witnessed the incident and backed up Bartlett's account, telling the responding officers that Garavaglia threatened Bartlett with a gun. Zak, Solberg, Fezatt, and Sackmann arrested Garavaglia based on Bartlett's accusations, as corroborated by Elias. Garavaglia was subsequently charged with multiple criminal offenses arising from his confrontation with Bartlett. But a jury acquitted Garavaglia of any criminal wrongdoing at trial.

After his acquittal, Garavaglia filed a suit under 42 U.S.C. § 1983, claiming that the defendants violated his Fourth Amendment rights. Garavaglia also alleges that Gogebic County neglected to train its deputies on probable cause, leading to his Fourth Amendment injury. State troopers Fezatt and Sackmann moved to dismiss Garavaglia's claim against them under Federal Rule of Civil Procedure 12(b)(6). Separately, defendants Elias, Solberg, and Zak, along with their employer Gogebic County, moved for judgment on the pleadings under Rule 12(c). The district court granted both motions and dismissed Garavaglia's entire case with prejudice. Specifically, the court held that the individual defendants were entitled to qualified immunity because Garavaglia failed to plausibly allege that they violated his Fourth Amendment rights. Likewise, the court held that Garavaglia failed to plausibly allege Gogebic County's deliberate indifference in the face of a clear and persistent pattern of Fourth Amendment violations. Garavaglia timely appealed.

## STANDARD OF REVIEW

2

We review de novo the district court's decision to grant the motion to dismiss and the motion for judgment on the pleadings. *Com. Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 336 (6th Cir. 2007). In conducting such a review, we must construe the operative pleading in the light most favorable to the plaintiff and accept all well-pleaded factual allegations as true. *Parrino v. Price*, 869 F.3d 392, 397 (6th Cir. 2017); *Coyer v. HSBC Mortg. Servs., Inc.*, 701 F.3d 1104, 1107–08 (6th Cir. 2012). Yet the pleading must contain enough factual allegations to support the plausible inference that the plaintiff is entitled to relief. *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). A complaint cannot survive on conclusory allegations or legal conclusions. *Id.* Nor can a plaintiff advance their claims based on "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

## ANALYSIS

To allege a plausible constitutional violation under 42 U.S.C. § 1983, a plaintiff must plead enough facts to show that (1) they were deprived of a constitutional right, in this case the Fourth Amendment right to an arrest and prosecution based on probable cause; and (2) the deprivation was caused by a person acting under color of law. *See Redding v. St. Eward*, 241 F.3d 530, 532 (6th Cir. 2001) (citing *Simescu v. Emmet Cnty. Dep't of Soc. Servs.*, 942 F.2d 372, 374 (6th Cir. 1991)). A plaintiff's pleading obligations do not change simply because the defendant invokes qualified immunity—the complaint still must allege enough facts to state a claim for a constitutional violation. *Crawford v. Tilley*, 15 F.4th 752, 764–65 (6th Cir. 2021) (citing *Iqbal*, 556 U.S. at 687).

The district court correctly found that Garavaglia's case cannot proceed beyond the pleading stage. The complaint fails to state a claim against the individual defendants because it

does not plausibly allege that any of them violated Garavaglia's Fourth Amendment rights. And without alleging a set of underlying constitutional violations, Garavaglia cannot proceed against Gogebic County either.

## I. Josh Elias

The complaint is too threadbare to state a claim against Elias. Aside from noting his employment at the Gogebic County Sheriff's Department, the complaint's only specific allegation against Elias states that he "was present for the subject incident and corroborated Bartlett's false version of events." R. 17 at ¶¶ 3, 12. That's not enough to allege a Fourth Amendment violation.

It is axiomatic that a person cannot be liable in a § 1983 suit unless he or she is acting on the government's behalf. *West v. Atkins*, 487 U.S. 42, 49–50 (1988). Accordingly, to state a claim for a constitutional violation, a plaintiff must plausibly allege that the public-employee defendant was "acting in [their] official capacity or while exercising [their] responsibilities pursuant to state law." *Id.* at 50. Critically, an officer who makes a purportedly false report does not act under color of law simply because they are employed by the police department. *Redding*, 241 F.3d at 532–33. For instance, in *Redding v. St. Eward*, we rejected constitutional claims against an off-duty police officer who called 911 and encouraged the responding officers to arrest the plaintiff. *Id.*

This case is analogous to *Redding*. The complaint only reflects that Elias was a reporting witness to the confrontation between Garavaglia and Bartlett, not an arresting officer wielding the power of the state. It does not allege that Elias himself physically arrested or restrained Garavaglia—indeed, it says that Zak, Solberg, Fezatt, and Sackmann arrested Garavaglia despite their purported knowledge that Elias's "corroboration of Bartlett's version of events was false." R. 17 at ¶ 17. Neither does Garavaglia's pleading claim that Zak, Solberg, Fezatt, and Sackmann acted at Elias's direction or instruction. *Redding*, 241 F.3d at 533. To the contrary, the complaint

rests on the premise that the arresting officers should have used their own judgment to disregard Elias's statement. Because Elias only gave a witness account that led to Garavaglia's arrest, his actions were "functionally equivalent to that of any private citizen calling for police assistance." *Id.* (quotation omitted). That's the same inference that *Redding* held as insufficient to sustain a § 1983 claim. And it is likewise insufficient to sustain Garavaglia's claim against Elias.

## II. Adam Zak, Ross Solberg, Evan Fezatt, and Alexander Sackmann

Garavaglia's Fourth Amendment claims against Zak, Solberg, Fezatt, and Sackmann rest on the bare assertion that the responding officers "knew or should have known" that Garavaglia did not threaten Bartlett with a firearm. R. 17 at ¶¶ 11, 13–17. But the complaint does not include factual allegations to support that bare assertion and hence does not demonstrate that the responding officers lacked probable cause to arrest Garavaglia.

To start, Garavaglia's claim cannot stand without plausible allegations that the responding officers lacked probable cause to arrest him. That's so regardless of whether his allegations against the responding officers are characterized as a single Fourth Amendment claim or as separate claims for false arrest and malicious prosecution. *Thompson v. Clark*, 596 U.S. 36, 43 (2022) ("[T]he gravamen of the Fourth Amendment claim for malicious prosecution . . . is the wrongful initiation of charges without probable cause."); *Wesley v. Campbell*, 779 F.3d 421, 429 (6th Cir. 2015) ("To show in response to a motion to dismiss that the arrest was wrongful, [the plaintiff] must plausibly allege that it was unsupported by probable cause."). We assess the sufficiency of the complaint based on the totality of the circumstances alleged at the moment of Garavaglia's arrest. *Wesley*, 779 F.3d at 429.

Probable cause exists if a prudent officer would believe that Garavaglia had committed or was committing an offense after considering both the inculpatory and exculpatory evidence. *Id.*

Accordingly, we look to the complaint to determine whether it raised the inference that Bartlett and Elias's allegations against Garavaglia were not "reasonably trustworthy." *Id*. at 429–30 (quoting *Logsdon v. Hains*, 492 F.3d 334, 342 (6th Cir. 2007)). More specifically, we ask whether there was an apparent reason for the responding officers to believe that Bartlett and Elias were lying, did not accurately describe what they had seen, or were mistaken in their recollection. *Wesley*, 779 F.3d at 430.

The complaint, however, does not contain any facts that could reasonably draw Bartlett and Elias's trustworthiness into question. Likewise, the complaint does not elaborate on its conclusory assertion that Zak, Solberg, Fezatt, and Sackmann "knew or should have known" that Bartlett and Elias were lying when they said Garavaglia threatened Bartlett with a gun. Without any explanation for why the responding officers should have believed Garavaglia's account or how they should have known Bartlett and Elias were lying, we cannot infer a lack of probable cause. It follows that Garavaglia failed to plead a cognizable Fourth Amendment claim. *See Twombly*, 550 U.S. at 555.

In his appellate briefing, Garavaglia attempts to use two unavailing facts to salvage his threadbare "knew or should have known" assertion. First, he refers to Bartlett and Elias's personal friendship to imply that the responding officers could not rely on Elias's corroboration of Bartlett's story to establish probable cause. But the complaint does not say that the responding officers knew that Bartlett and Elias were friends or otherwise explain how they should have known that Elias might lie to advantage Bartlett. In any event, a personal relationship between people who give statements to police does not, on its own, preclude the responding officers from relying on those statements to form probable cause.

6

Second, Garavaglia refers to Elias as a "brother officer" on appeal, suggesting that the responding officers afforded inappropriate deference to Elias's statement about the confrontation because he is also in law enforcement. But we cannot say that Zak, Solberg, Fezatt, and Sackmann should have reacted differently to Elias's statement just because he is also a law enforcement officer. Moreover, Garavaglia did not plead another reason that the responding officers should have disregarded Elias's statement. Accordingly, the complaint does not state a Fourth Amendment claim against Zak, Solberg, Fezatt, and Sackmann because it does not show that they lacked probable cause to arrest Garavaglia. Without plausibly alleging a constitutional violation, Garavaglia fails to overcome the responding officers' qualified-immunity defense. *Crawford*, 15 F.4th at 760.

## III. Gogebic County

Garavaglia's failure-to-train claim pursuant to *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978) cannot proceed because it too is devoid of plausible factual allegations.

To properly allege a *Monell* claim under a failure-to-train theory, Garavaglia had to plead sufficient facts to satisfy the following elements: "(1) a clear and persistent pattern of illegal activity, (2) which the county knew or should have known about, (3) yet remained deliberately indifferent about, and (4) that the county's custom was the cause of the deprivation of [Garavaglia's] constitutional rights." *Siefert v. Hamilton Cnty.*, 951 F.3d 753, 767 (6th Cir. 2020) (quoting *Bickerstaff v. Lucarelli*, 830 F.3d 388, 402 (6th Cir. 2016)) (cleaned up). Garavaglia cannot satisfy the first three elements because he did not describe any Fourth Amendment violations in Gogebic County that preceded his arrest. And Garavaglia cannot satisfy the fourth element without plausibly alleging that Gogebic County Sheriff's Deputies Elias, Solberg, or Zak

7

violated his Fourth Amendment rights, which he did not do—as discussed above. Therefore, Garavaglia's *Monell* claim fails.

**CONCLUSION**

We AFFIRM the district court's grant of Fezatt and Sackmann's motion to dismiss and Elias, Solberg, Zak, and Gogebic County's motion for judgment on the pleadings.